[No. 10830.   Department Two.   April 28, 1913.]

JACOB SIMILA, *Appellant*, v. NORTHWESTERN IMPROVEMENT COMPANY, *Respondent*.[1]

MASTER AND SERVANT — INJURY TO SERVANT — PLEADINGS — ISSUES AND PROOF — GENERAL DENIAL. In an action by an employee in which the complaint alleges injuries caused by the negligent acts of servants of the defendant, without pointing out the particular servants who caused the injury, the defendant may, under a general denial, show that the persons who caused the injury were not in its employ but were servants of an independent contractor.

SAME — INDEPENDENT CONTRACTORS — EVIDENCE — QUESTION FOR JURY. Whether persons engaged in getting out timbers for a mining company under a contract, whereby the company agreed to pay specified prices for the timbers at the mine, are servants of the owner or independent contractors, is a question for the jury, where the timber was cut on land belonging to the company, the contract did no more than fix the prices to be paid and the only testimony that the company did not retain control of the work was that of the foreman, which was contradicted by the circumstance that, on complaint made, he promised to remedy the reckless manner in which the timbers were sent down a chute; the presumption being that persons employed to work on premises of another were servants, casting the burden of proof upon the defendant (MORRIS, J., dissenting).

Appeal from a judgment of the superior court for Pierce county, Card, J., entered April 15, 1912, upon the verdict of a jury rendered in favor of the plaintiff by direction of the court, in an action for personal injuries. Reversed.

*Gordon, Easterday & Askren*, for appellant.

*Geo. T. Reid, J. W. Quick*, and *L. B. da Ponte*, for respondent.

[1]Reported in 131 Pac. 831.

FULLERTON, J.—This action was brought by the appellant against the respondent to recover for personal injuries. The respondent owns and operates a coal mine located near Melmont, in Pierce county. The appellant was an employee in the mine. In passing to and from his boarding place and his place of work, the appellant was obligated to travel for the greater part of the way along the track and right of way of a railroad company, there being no other open way between the two places, and seemingly no other place where board could be had without making use of this particular way. In and about the underground workings of the mine, the respondent used props, lagging, gangway sets, and other timbers, which it obtained from its own property, situated on the side of a mountain sloping upwards from the railroad track and about five hundred feet therefrom. The timbers were brought to the railroad track by means of a gravity slide, an open topped, trough shaped chute, extending from the place where the timbers were cut to the railroad right of way, the end of the chute stopping about ten feet short of the nearest rail and about five feet above the ground. The appellant, while passing along the track to his place of.work, was struck and severely injured by a piece of timber which came down the chute.

In his complaint the appellant alleged facts which tended to show that his injuries were caused by the negligence of the persons getting out the timbers, and these he alleged to be the agents and servants of the respondent. In its answer, the respondent denied generally the allegations of the complaint, and for an affirmative answer alleged, "That whatever injury the plaintiff received at the time and place mentioned in his complaint was in no manner caused by the carelessness and negligence of this defendant, or any of its agents, servants or employees, but was caused by the carelessness and negligence of the said plaintiff in failing to exercise ordinary care and caution for his own safety and

protection," but no other or further affirmative defense was pleaded;

At the conclusion of the trial, the respondent moved for an instructed verdict, on the ground that the negligence, if any, which resulted in the injury to the plaintiff was the negligence of the independent contractor, and not the negligence of the respondent. This motion the trial judge sustained, and entered a judgment against the appellant to the effect that he take nothing by his action.

The evidence introduced by the respondent to prove that the persons getting out the timbers were independent contractors, was introduced over the appellant's objection, and the appellant now insists that its admission was error requiring reversal, because not set out as an affirmative defense in the answer. The appellant admits that there is considerable authority in support of the rule that evidence of the relationship of independent contractor may be given under a general denial, but it is contended that the cases so holding are not in harmony with the spirit of our code, and contrary to cases from this court involving similar principles. Undoubtedly it is the spirit of the code that the pleadings should reflect the contentions of the parties, and this court has many times said that a distinctive affirmative defense cannot be given in evidence over objection under a general denial. But is the showing that a person causing an injury and alleged to be the agent or servant of another was not such agent or servant the showing of an affirmative defense? It seems to us that it is not.

The appellant, in order to state a cause of action against the respondent, was obligated to allege that the injuries for which he sought to recover were inflicted upon him by persons for whose acts the respondent was responsible. The respondent was entitled to put in issue the allegation, and in case the appellant sought to sustain it by proofs, to offer in evidence counterproofs; and it seems to us clear that it is

legitimate counterproof to show the actual relations existing between it and the persons for whose acts it is asserted to be responsible. It must be remembered, also, that the appellant did not point out in his complaint the particular persons whom he expected to show caused his injury; his allegation was general in that respect. We think it was competent, therefore, for the respondent to deny the allegation generally, and when the appellant pointed out the particular persons whom he charged represented the defendants, to show that such persons were not its representatives, but were persons operating on their own initiative, or, in other words, were independent contractors. No case has been pointed out to us from our own decisions which determines the precise question, nor do we think those relied upon by the appellant sustain the principle contended for. Cases that seem to us to be more closely analogous and which oppose the principle, are the following: *Kerron v. North Pacific Lum. & Mfg. Co.*, 1 Wash. 241, 24 Pac. 445; *Chamberlin v. Winn*, 1 Wash. 501, 20 Pac. 780; *Carkeek v. Boston Nat. Bank*, 16 Wash. 399, 47 Pac. 884; *Peterson v. Seattle Traction Co.*, 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586; *Harvey v. Ivory*, 35 Wash. 397, 77 Pac. 725; *Coey v. Low*, 36 Wash. 10, 77 Pac. 1077; *Chrast v. O'Connor*, 41 Wash. 360, 83 Pac. 238; *Shine v. Culver*, 42 Wash. 484, 85 Pac. 271.

The more difficult question is whether the court erred in taking the question of the respondent's liability from the jury. The court rested his decision on the ground that the persons getting out the timbers were independent contractors, and themselves liable to the appellant, if any one was so liable. In support of its contention, the respondent introduced the following agreement, entered into between itself and the persons getting out the timbers:

"Melmont, Wash., December 2, 1907.

"This agreement made this second day of December nineteen hundred and seven by and between the Northwestern Improvement Company in the first part and Dominick Yazzo-

lina, Carmen Yazzolina, John Yazzolina, G. F. Yazzolina and Frank Ippolita, parties of the second part, to furnish timbers at Melmont Mine at the following prices and under the conditions herein specified. All timbers to be delivered at the mouth of the mine and mine openings. This contract expires November 30, 1908, or at any time previous to that date providing the party of the first part should not be in need of the said timbers. Prices:

| | | |
|---|---|---|
| 6' split props | 5x5 at small end | 3c each |
| 8' " " | 5x8 " " " | 5c each |
| 10' " " | 6x8 " " " | 7c each |
| Round props | 7" dia | 1c per ft. |
| 6 & 7 ft lagging | 2x6 | 2c each |
| Ties | 6" face | 2c per ft. |
| Gangway sets barked & framed | 12 to 16" dia | 3c per ft." |

But it seems to us that the writing alone proves nothing. It is as consistent with the claim that the parties thereto sustain the relationship of master and servants as it is with the claim that the relationship is that of employer and independent contractor. It does no more than fix a price for the delivery of timbers at the mine. This is not sufficient to make the parties performing the work independent contractors. An independent contractor is one who renders service to another in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. If the employer may control the manner of doing the work, the relation of master and servant exists, no matter what terms may have been agreed upon as to the method of payment. *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904; *Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861.

The respondent, realizing the inconclusiveness of the terms of the contract, sought to supplement it by parol, and one of the parties to the contract did testify that the chute was constructed and operated by the parties getting out the timbers,

and that the respondent had nothing to do with the work, but did not testify that the respondent did not reserve the right to superintend and control the work. Moreover, on cross-examination, he testified as follows:

"Q. . . . This is the company's timber you were cutting? A. I would say so. Q. And it was cut from the company's land? A. Upon their land, certainly. Q. And the timbers were cut to be used in the mine? A. Yes. Q. And instead of paying you by the day or wages, they paid you so much a piece? A. Yes."

The testimony of the superintendent of the mine was more to the point. He did say that the company had no control over the work. But it was testified by the appellant's witnesses that only a short time before the accident complaint was made to him of the reckless manner in which timbers were being sent down the chute, and that he did not then disclaim authority, but promised to see that the trouble was remedied. This was not only contrary to his present contention, but tended to mislead the workmen.

Presumptively a person employed to work on the premises of another and for that other's benefit is a servant, and if the employer seeks to avoid liability for the employee's acts, on the ground that he was an independent contractor, the burden is upon him to establish the independence of the employee. *Midgette v. Branning Mfg. Co.*, 150 N. C. 333, 64 S. E. 5; 1 Shearman & Redfield, Negligence, § 71. We think, therefore, that the question of the relationship of the parties was here one of fact rather than one of law, and that it should have been submitted to the jury.

It is argued that there is not sufficient evidence of negligence on the part of the persons getting out the timbers to make a case for the jury, or if there was such evidence, the appellant is estopped to avail himself of it because of his contributory negligence. But without further elucidating the facts, we think these were also questions properly to be submitted to the jury.

The judgment is reversed, and remanded for a new trial. CROW, C. J., MAIN, and ELLIS, JJ., concur.

MORRIS, J. (dissenting)—I think the record sustains the lower court in holding the negligence, if any, was that of an independent contractor. I therefore dissent.