[No. 12302.  Department Two.  May 22, 1915.]

MARTINA JOHNSTON, *Respondent*, v. SEATTLE TAXICAB & TRANSFER COMPANY et al., *Appellants*.[1]

APPEAL AND ERROR—NOTICE OF APPEAL—NOTICE BY CODEFENDANTS. A codefendant, similarly affected by the judgment, must join in the appeal or take an independent appeal within ten days after notice of appeal, as required by Rem. & Bal. Code, § 1720.

MASTER AND SERVANT — INDEPENDENT CONTRACTOR — LIABILITY OF PRINCIPAL. A subcontractor sustains the relation of an independent contractor, for whose negligence in injuring third persons the principal contractor would not be liable, where he was employed by a building company to do the excavation work necessary for the construction of a building, no control was exercised over the manner of doing the work, he used his own equipment, employed and paid his own men, and the work was not so intrinsically dangerous as to probably result in injuries to third persons, and a reservation by the employer of the right to supervise the work for the purpose of determining whether it is being done in accordance with the contract does not affect the independence of the relation.

[1]Reported in 148 Pac. 900.

SAME—RELATION—INDEPENDENT CONTRACTOR — NEGLIGENCE — PARTIES LIABLE. A superintendent employed by a building company, whose duties did not begin until after excavation therefor was completed, is not liable for injuries received by reason of the negligence of a subcontractor in doing the excavation work.

MUNICIPAL CORPORATIONS—OBSTRUCTIONS IN STREET—PERSONAL INJURIES—PROXIMATE CAUSE. In an action for injuries by a passenger in a taxicab when it collided with a drag unlawfully used in the street by a building contractor without any permit, the question of whether the unlawful use of the drag was the proximate cause of the injury was for the jury.

TRIAL—MISCONDUCT OF COUNSEL—IMPROPER ARGUMENT. Where the argument of counsel transgresses the bounds of propriety by seeking to inflame the minds of the jury against a defendant corporation, and urging that, in order to hold the corporation, they must find against a certain other defendant, it is prejudicial to the latter defendant; and the refusal of the court to interfere when requested, or to instruct the jury to disregard the remarks of counsel, possibly leading the jury to believe the court indorsed the statements, tended to enhance the prejudice.

Appeal from a judgment of the superior court for King county, Humphries, J., entered April 13, 1914, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained through an obstruction in a street. Affirmed in part and reversed in part.

*Brightman, Halverstadt & Tennant,* for appellant Seattle Taxicab & Transfer Company.

*John W. Roberts* and *George L. Spirk,* for appellants Puget Sound Bridge & Dredging Company *et al.*

*McCafferty, Robinson & Godfrey,* for respondent.

MAIN, J.—The purpose of this action was to recover damages for personal injuries alleged to be due to the negligence of the defendants. In the original complaint the Seattle Taxicab & Transfer Company, a corporation, and Frederick M. Gribble and wife, were made defendants. Subsequently, upon motion of the Taxicab Company, A. C. Goerig and wife, and the Puget Sound Bridge & Dredging Company, a corporation, were made defendants. The cause was tried to

the court and a jury.  A verdict was returned in favor of the plaintiff and against all of the defendants.  Motion for a new trial being made and overruled, the defendants appeal.

The facts, so far as necessary to an understanding of the questions presented upon this appeal, are, in substance, as follows:  On January 1, 1913, the Elks Investment & Construction Company, a corporation, being then the owner of a lot at the southwest corner of Fourth avenue and Spring street, in Seattle, contracted with the Puget Sound Bridge & Dredging Company for the erection of a building thereon. This contract provided that the building should be constructed according to the plans and specifications prepared by the architect for the Elks Investment & Construction Company.  It also provided that the work was to be done under "the direction of the authorized representative of the owner, who shall be denominated herein as superintendent or architect."  The bridge company contracted with one A. C. Goerig to do "all the excavating for the Elks building located on the southwest corner of Fourth avenue and Spring street, in the city of Seattle, Washington."  The excavation was to be done according to the plans and specifications prepared by the Elks Investment & Construction Company.  The work was to be done "satisfactory to the superintendent in charge and the party of the second part (the bridge company)."

After this contract had been entered into, Goerig entered upon the performance of the work called for by the contract. The dirt was removed by means of teams and wagons.  When a wagon was loaded, it would come out on Spring street at the alley, which was equidistant from Fourth and Third avenues, Spring street extending east and west.  Third and Fourth avenues were at right angles to Spring street.  The grade of Spring street from Third to Fourth avenue is about 18 per cent.  This street, between the avenues mentioned, is paved with granite blocks.  The grade of Spring street being very heavy, a team of horses was unable to hold back a wagon loaded with dirt as it descended from the alley to

Third avenue. For the purpose of aiding the teams in holding back the loaded wagons during their descent of this grade, Goerig devised a counterweight, which consisted of a pulley placed in a post at the alley corner, a 3-8 inch cable, and a sled or drag, about four feet square, loaded with rock. The cable passed through the pulley. Upon one end of it was a hook. The other end was attached to the sled. On the opposite side of the sled to the one where the cable was attached, there was a short cable, a few feet in length, with a hook on the end. When a loaded wagon would come out of the lot to the alley corner, the hook at the end of the short cable would be attached to the rear end of the wagon. The team pulling the loaded wagon would then start down the hill, and the sled would drag behind the wagon. The direction taken was from the alley corner to the northwest corner of the intersection of Spring street with Third avenue. When the team and wagon reached this latter point, the sled was detached from the wagon. The grade from there on was comparatively level. When the next loaded wagon would start down, the hook attached to the long cable would be made fast to the rear end of the wagon, and as it descended, the sled would be dragged up to the alley corner. This operation was repeated as the work progressed, one loaded wagon pulling the sled down, and another pulling it up. In each instance the sled operated as a brake, or counterweight to hold back the loaded wagon as it descended the grade. When the drag was not in use, it was taken from the street and placed inside the area excavated.

On the morning of February 18, 1913, while the work of excavating was in progress, the plaintiff employed the taxicab company to convey her in one of its vehicles from her home to her office in the Burke building. In making this trip, the driver of the taxicab, instead of going two blocks further to the north where there was a comparatively level street, attempted to go down Spring street from Fourth to Third avenue. The pavement was wet and slippery. The

taxicab was not equipped with either chains or non-skid tires. After the taxicab left the west margin of Fourth avenue, and before it reached the alley between that avenue and Third avenue, it began to skid, and continued to skid for a distance of from 120 to 150 feet. While skidding it passed over the cable attached to the drag, at a point about the center of the street and about the middle of the cable. The cable extended at that time from the alley corner in a northwesterly direction to near the northwest corner of the intersection of Third avenue with Spring street. The sled at this time was located about two feet from the curb on the north side of Spring street and close to Third avenue. The taxicab, from the point where it began to skid, continued in its uncontrolled descent until it collided with the sled at the point above mentioned. From this collision, the plaintiff sustained injuries for which she brought the present action.

Upon the trial in the superior court, at the conclusion of the plaintiff's evidence, each of the defendants moved for a nonsuit. These motions were denied. At the conclusion of all of the evidence, the defendants challenged the sufficiency thereof to sustain a verdict, and moved for a directed verdict. The request for a directed verdict was denied as to all of the defendants. The cause was submitted to the jury and a verdict returned for the plaintiff in the sum of $3,000. As already stated, from the judgment entered upon this verdict, all of the defendants have appealed.

The respondent opens her brief with a motion to dismiss the appeal and affirm the judgment as to the taxicab company. The facts pertinent to this motion are these: The judgment against the defendants was entered on April 13, 1914. On June 6 thereafter, the bridge company, Gribble and wife, and Goerig and wife appealed from this judgment by giving notice of appeal and serving the same upon the respondent's attorneys, and the attorneys for the taxicab company. On the same day a cost and supersedeas bond on behalf of the bridge company and Gribble and wife was filed,

and a cost bond on behalf of Goerig and wife.   On July 3, the taxicab company sought to perfect an independent appeal by serving and filing a notice thereof, and on July 8, thereafter, filed a cost and supersedeas bond.   From these facts it is apparent that more than ten days had elapsed after the notice of appeal by the other appellants had been served upon the attorneys for the taxicab company before that company served its independent notice of appeal.   Under the statute, Rem. & Bal. Code, § 1720 (P. C. 81 § 1191), it was necessary that the taxicab company serve its notice of appeal within ten days after it had been served with the notices of the other appellants.   Failure to meet this requirement of the statute makes it necessary that the motion to dismiss the appeal and affirm the judgment be granted.   *Griffith v. Seattle Nat. Bank Building Co.*, 16 Wash. 329, 47 Pac. 749; *Peck v. Peck*, 76 Wash. 548, 137 Pac. 137.

Upon the merits, as to the bridge company, the first question is, whether the contract of that company with Goerig for excavating constituted the latter an independent contractor.   The general rule is that an independent contractor is one who renders services to another in the course of an independent occupation, representing the will of his employer only as to the result of the work and not as to the means by which it is accomplished; the chief consideration being that the employer has no right to control as to the mode or manner of doing the work; but a reservation by the employer of the right to supervise the work for the purpose of determining whether it is being done in accordance with the contract does not affect the independence of the relation.   *Larson v. American Bridge Co.*, 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904; *Seattle Lighting Co. v. Hawley*, 54 Wash. 137, 103 Pac. 6; *Cary v. Sparkman & McLean Co.*, 62 Wash. 363, 113 Pac. 1093; *Glover v. Richardson & Elmer Co.*, 64 Wash. 403, 116 Pac. 861; *Simila v. Northwestern Imp. Co.*, 73 Wash. 285, 131 Pac. 831.

Under the rule stated, there can be no question but that Goerig was an independent contractor. The work was done by Goerig with his own wagons, teams, and equipment. He employed his own men and paid them with his own checks. The bridge company exercised no control whatever over the manner of doing the work. The only part which it had after letting the contract was to pay Goerig for the work done. Goerig was responsible to the bridge company alone for the result of the work and not for the manner in which it was performed. Where the act complained of was that of an independent contractor, his employer is not liable for such act unless the facts of the case bring it within one of the exceptions to the rule of nonliability. One of the exceptions to the rule of nonliability is that a party cannot evade responsibility by placing an independent contractor in charge of the work, where the work to be done is inherently or intrinsically dangerous in itself and will necessarily or probably result in injury to third persons unless measures are adopted by which such consequences may be prevented. *Kendall v. Johnson,* 51 Wash. 477, 99 Pac. 310; *Freebury v. Chicago, Milwaukee & Puget Sound R. Co.,* 77 Wash. 464, 137 Pac. 1044.

The act of placing the drag in the street did not relate to the act of performance of the work contracted for, but it did relate to the manner of its performance. The work contracted for was not inherently or intrinsically dangerous, and was not such as would necessarily or probably result in injuries to third persons unless measures were adopted by which such consequences could be avoided.

As to Gribble and wife, the record is silent so far as any evidence may be concerned that would sustain a judgment as against them. Gribble was employed by the bridge company for the purpose of superintending the construction of the building. He had nothing to do with the excavation, and at no time gave Goerig any directions or suggestions as to the manner of doing the work. His duties did not begin

until after the excavation had been completed and the constructive work of the building was begun.

As to Goerig and wife, the record presents a question of fact for the jury, at least in a suit where the plaintiff was merely a passenger in a taxicab at the time of the accident. We express no opinion upon the question were the suit by the taxicab company against Goerig. Goerig had not obtained from the city, as required by the ordinances thereof, a permit for the use of this drag in the street. In the absence of such a permit, the use of the drag in the street in the manner described was not lawful. The taxicab having collided with the sled while it was being used without a permit, would present the question whether the drag was the proximate cause of the injury, and this was for the jury to determine under proper instructions.

Many errors are assigned which it is claimed call for a reversal of the judgment. But one of these need be noticed. During the argument to the jury, counsel for the respondent, over the objection and exception of counsel for all of the defendants except the taxicab company, used this language:

"His Honor, Judge Humphries, is noted as one of the ablest judges in the state, and Mr. Roberts tried to convince him that there was no case against his corporation, and Judge Humphries, notwithstanding the persistent argument by Mr. Roberts, held against him. His Honor said, notwithstanding that this man Roberts argued to the court with all his ability and persistency, that the defendants represented by him, including the corporation, were not liable, that nevertheless, the case against the Puget Sound Bridge & Dredging Company should not be dismissed."

Also,

"This man Roberts talks a good deal about poor Goerig, but he cares no more for Goerig than the dirt under his feet. He is here trying to get out this big corporation that he represents. That's what he is hired for. He is trying to fool you by praying for sympathy for poor Goerig, but I

want to warn you that if you don't find against Goerig and Gribble, you can't find against his corporation. You have heard all this testimony, and it is for you to say, after hearing it all, and considering it all, from every point of view, whether or not Goerig is liable for any negligence that has occurred, and if he is, then the bridge company is liable, and you must hold both in order to hold either. One must be held in order to hold the other. The object of Mr. Roberts, and the purpose of his sympathy, of course, all the way through is to get up sympathy for Goerig in order to save him, and, in that way, save his company. He don't, as I said before, if you will excuse a further repetition, he does not care a snap about Goerig, or his wife, or his children. That is of the slightest possible account to John Roberts. It is the big, big, big, company that he represents, that he is looking after, and if he saves one, he saves the other. Now, watch it. Keep it in your mind. You are the judges of all the facts, and it is for you to say who is to be held."

Prior to the time when these remarks were made, the same counsel had objected to the remarks made in behalf of the taxicab company. In response to this objection, the court said:

"I can't limit all your argument. You have a right to explain things."

The argument, the tenor of which is shown by the excerpts quoted, transgresses the bounds of propriety, and was prejudicial to Goerig and wife. The purpose, apparently, was to first inflame and prejudice the minds of the jury against the bridge company, and then tell the jury that they must hold Goerig and wife, otherwise this "big, big, big" corporation would be released. Goerig and wife had a right to have their case submitted to the jury upon its merits. What the effect of a verdict for or against these particular defendants might have upon any of the other defendants was no concern of the jury. The noninterference of the court when the request was made that the jury be instructed to disregard the remarks of counsel, may have led the jury to believe that the court indorsed the statements made, and thus the prejudice

would be enhanced.  The language of counsel, and the non-interference of the court, denied to Goerig and wife the right to have the case submitted to the jury solely upon its merits, and to have the jury determine it uninfluenced by passion or prejudice for or against any other party to the action.  For this error, the judgment must be reversed.  *Spencer v. Arlington,* 49 Wash. 121, 94 Pac. 904; *Cranford v. O'Shea,* 75 Wash. 33, 134 Pac. 486; *Rogers v. Kangley Timber Co.,* 74 Wash. 48, 132 Pac. 731.

The appeal of the taxicab company will be dismissed and the judgment as to that company affirmed.  The judgment as to the Puget Sound Bridge & Dredging Company, and Gribble and wife, will be reversed, and the cause directed to be dismissed as to them.  The judgment against Goerig and wife will be reversed and the cause remanded as to them for a new trial.  The Puget Sound Bridge & Dredging Company, Gribble and wife, and Goerig and wife will recover their costs in this court against the respondent.  The respondent will have costs against the Seattle Taxicab Company, except as to those costs which are charged against her and in favor of the Puget Sound Bridge & Dredging Company, Gribble and wife, and Goerig and wife.

MORRIS, C. J., ELLIS, and CROW, JJ., concur.