[No. 22106. Department Two. February 3, 1930.]

JENNIE R. SWAM *et al., Respondents,* v. AETNA LIFE INSURANCE COMPANY OF HARTFORD, *Appellant.*[1]

*Post & Russell,* for appellant.

*Pickrell & Stotler* and *Williams & Cornelius,* for respondents.

FRENCH, J.—Noel Hays was a farmer in eastern Washington, operating, among other properties, a farm near Endicott, Washington, as a tenant of Phillip Aschenbrenner. In July, 1928, Mr. Hays obtained from the Aetna Life Insurance Company of Hartford, Connecticut, a liability insurance policy. The policy, together with the indorsements thereon, in so far as the same are material to this case, read as follows:

"Policy No. 0160296.

"IN CONSIDERATION of the premium herein provided the Aetna Life Insurance Company of Hartford, Connecticut (called the company)

"DOES HEREBY AGREE TO INDEMNIFY the assured described in the warranties hereof, within the amounts as expressed herein, AGAINST LOSS AND/OR EXPENSE ARISING OR RESULTING FROM CLAIMS UPON THE ASSURED FOR DAMAGES on account of bodily injuries and/or death accidentally suffered, or alleged to have been suffered, by an employee or employees of the assured as provided in said warranties, by reason of the business as described and conducted at the locations named therein, whether said injuries and/or death are accidentally suffered, or alleged to have been suffered, at the locations named or elsewhere, save and except claims arising by reason of:

"(1) Injuries and/or death to or caused by any person employed in violation of law as to age, or of any age under fourteen (14) years, where there is no legal restriction as to age of employment.

"(2) Liability of others assumed by the assured under any contract or agreement oral or written.

"INDORSEMENT.

"It is hereby agreed that this policy does not cover any obligation assumed by or imposed upon the assured by any workmen's compensation agreement, plan or law, unless the policy is extended by an indorsement covering such obligation.

"E. C. Higgins, Secretary.

"INDORSEMENT.

"Voluntary compensation coverage, state of Washington.

"It is understood and agreed that the company will pay, upon conditions and in manner hereinafter set forth, compensation and medical, surgical and hospital benefits in amounts as provided and limited by the workmen's compensation act of the state of Washington, chapter 28, Session Laws of 1911, and the medical aid act of the state of Washington, Session Laws of 1917, and acts amendatory thereof, on account of personal injuries and/or death sustained by any employee of the assured, as defined in said policy, by accident arising out of and in the course of his or her employment, as so defined, provided such injured employee or in case of death, his or her legal representative is willing to accept the same, and in a lump sum settlement, if the company elects to pay in one lump sum payment, and will execute and deliver to the company a release discharging the assured and the company from any and all liability on account of said accident.

"Nothing herein contained shall be construed to waive, alter or extend any of the provisions of said policy except as herein provided.

"Forming a part of the policy to which it is attached from its date of issue.

"E. C. Higgins, Secretary.

"Form 8168-A.

"INDORSEMENT.

"(Relating to operations in the state of Washington).

"It is hereby mutually understood and agreed that the insurance contract to which this indorsement is attached, within the amounts as expressed therein, and subject to all its provisions, conditions, and warranties, covers claims for damages on account of accidents to employees engaged in works or occupations not embraced within the term "extra hazardous" as defined in the statute or used in the workmen's compensation law of the state of Washington same being originally Chapter 74 of the Laws of 1911, and all amendments

thereto, which employees are not eligible for compensation from the state accident fund, and furthermore said policy does not cover claims arising on account of accidents to employees engaged in occupations which are embraced within the term 'extra hazardous' and are eligible for compensation from the state accident fund.

"It is further understood and agreed that said policy does not cover claims or suits for premiums by the state under said act, or the defense of such suits for premium.

"Forming a part of the policy to which it is attached from its date of issue.

> "AETNA LIFE INSURANCE COMPANY,
> "Accident and Liability Department,
> of Hartford, Conn.
> "E. C. Higgins, Secretary.

"Form 6296-B.

### "INDORSEMENT.

"It is hereby understood and agreed that warranty No. 10 of the policy to which this indorsement is attached is entirely eliminated and the following substituted in lieu thereof:

"The policy period shall be 12 months beginning on the 16th day of July, 1928, at 12:01 a. m., and ending on the 16th day of July, 1929, at 12:01 a. m., standard time at the location of the business described in the warranties hereof.

"Attached to and forming a part of Policy No. E-0160296, dated July 16, 1928, issued by the AETNA LIFE INSURANCE COMPANY, Accident and Liability Department, of Hartford, Connecticut, to Noel L. Hays. Countersigned Elmendorf-Anthony Co.

> "E. C. Higgins,
> "By ————, Gen'l Agt.-Manager.

"Form 6255-D.

"The estimated compensation includes that of all persons engaged in the business as described herein (whether compensation by salary, wages, for piece work, overtime or allowances, and whether paid in cash in whole or in part—in board, store certificates, merchandise, credits or any substitute for cash) to whom

compensation of any nature is paid including president, vice-president, secretary-treasurer and clerical force except as follows: Assured Noel L. Hays.''

On the 25th day of September, 1928, the windmill on the Aschenbrenner place needed repairs. Mr. Hays did not live on this place, but operated it as a tenant along with other land. The repairing of the windmill was rather a simple operation, and consisted in removing and replacing certain bushings and bearings. Aschenbrenner furnished the parts, and Hays was to have the work done.

Being busy with other work at the time, Mr. Hays had not the time to do this work himself, but drove down to see Mr. Swam for the purpose of getting him to come out and do the work in question. Mr. Swam had lived around Endicott for a good many years, was a sort of handy man around the town, owned his own concrete mixer, and sometimes took contracts for carpenter work, repair work, concrete work, repairs to threshing machinery, windmills, and other like work, sometimes by the hour, sometimes by the day, sometimes doing the work himself, and at other times being assisted by others. On the day in question he was engaged in a roof repair job with a number of employees when Hays went out where he was working to see if he could get him to repair the windmill.

Swam finally agreed to go out that evening. He took his truck and drove out, taking with him a man by the name of Ross. Hays arrived at the farm where the windmill was located shortly after the work was started, and found Swam busily engaged in taking out the old parts and putting in the new. The record is a little indefinite as to who employed Ross to go along. Nothing was said about the rate of pay, in fact, very little seems to have been said about the entire business. As we gather from the record, the job was not

much more complicated than taking off an old set of tires from an automobile and putting a new set on. While working on the tower of the windmill, and after some of the old parts had been removed, it became necessary to use a rope, as we understand, to tie the wheel of the windmill in a certain position. This rope broke and, as a result, Swam fell off the tower of the windmill, and died shortly thereafter as a result of the injury.

This action was brought by the respondent as plaintiff to recover on the insurance policy, and this appeal follows from a judgment allowing such recovery.

Appellant raises but one question in this court, namely, under the facts in this case, Frank Swam was an independent contractor, and was therefore not covered by the terms of the policy. The rules laid down to distinguish an independent contractor from an employee have been stated many times by many courts, including our own.

"The principal consideration in determining the question is the right to control the manner of doing the work. Generally speaking, it may be stated that, if the employee is under the control of the employer, he is a servant or employee and not an independent contractor, but if in the performance of the work he is not under the control of the employer, he is an independent contractor. However, it is not the actual exercise of the right of interfering with the work but the right to control which constitutes the test." 31 C. J., p. 474.

"If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also may direct the means and methods by which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor. So the master test

is the right to control the work. And it is this right which properly differentiates service from independent employment. It is to be observed that actual interference with the work is unnecessary—it is the right to interfere that determines." *Kelley's Dependents v. Hoosac Lumber Co.*, 95 Vt. 50, 113 Atl. 818.

"The power of an employer to terminate the employment at any time is incompatible with the full control of the work which is usually enjoyed by an independent contractor, and hence is considered as a strong circumstance tending to show the subserviency of the employee. Indeed, it has been said that no single fact is more conclusive, perhaps, than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself." 14 R. C. L., p. 72.

Our own cases have been generally reviewed in *Machenheimer v. Department of Labor and Industries,* 124 Wash. 259, 214 Pac. 17, and *Burchett v. Department of Labor and Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746, and both of these cases recognize the rules above stated as being correct statements of the law, but the facts of each so distinguish them from the instant case as to make them of little value in the application of the rules.

There seems to be little difference in the authorities generally as to the law on the subject, but there is a hopeless and apparently irreconcilable conflict of authority as to the state of facts to which the law will apply. In the instant case, the facts seem to indicate clearly that Swam was under no obligation to repair the windmill, could have quit the job at any time he saw fit, or could have been discharged by his employer at any time. There seems in this case to have been no particular supervision of the work by Hays, but, on the other hand, the very simplicity of the work itself was such as to require no supervision, and the short time it would take to complete the job indicates that it needed

no supervision. It seems to be admitted by both appellant and respondent that this work to be done was necessarily farm work. In construing a policy such as this, this court has said:

"We believe the general rule, calling for a liberal construction of insurance policies in favor of the insured, warrants the construction adopted by the trial court, having in mind that this question in its last analysis becomes a question of what is the extent of the indemnity furnished appellant by the policies. When that question is determined, it of course follows that the compensation of all employees whose injuries or death appellant is indemnified against furnishes the measure for determining the amount of premiums earned during the life of the policies." *Empire State Surety Co. v. Moran Bros. Co.,* 71 Wash. 171, 127 Pac. 1104.

The converse of this rule must necessarily be true, that, if the company could recover premiums based upon the amount of money paid for the labor on this windmill, then the person doing the work was necessarily protected by the indemnifying clauses of the policy. Respondent argues that there can be no question but what, under the terms of this policy and the facts of this case, the premium paid on this policy would necessarily be based upon, among other items, the amount paid for the labor on this windmill.

We have also held that "presumptively a person employed to work on the premises of another and for that other's benefit is a servant;" *Simila v. Northwestern Improvement Co.,* 73 Wash. 285, 131 Pac. 831; thus establishing that, under the facts of this case, it being shown that Swam was actually working on the premises in question at the time of his accident, the burden is thus cast upon the insurance company of showing that he was an independent contractor.

Here we have a case of a man who was to do a very simple thing. As we gather from the record, it consisted of taking out old parts and putting in new ones which had been furnished, and which work could have been done by any man who had any mechanical ability at all. The job, we understand, could have been completed by the two men in two or three hours. These men were to be paid, as we gather from the record, on a time basis. True, Hays states that he expected to pay what the job was worth, but later in the testimony the fact abundantly appears that what the job was reasonably worth was reasonable wages for the time consumed in doing the work. It may be that Ross was employed by Swam, although, as we said heretofore, the record is indefinite; but that fact is far from conclusive, and has little probative force. *Welden v. Skinner & Eddy Corporation,* 103 Wash. 243, 174 Pac. 452.

Taking all of the facts in this case, the presumption being as stated in the *Simila* case, *supra,* the indefinite nature of the employment, namely, to go out there and repair the windmill, the fact that the job required but a short space of time, hardly sufficient in importance to form the basis of an independent contract, and the fact, as it clearly appears in the record, that Swam could have been discharged at any instant and no liability incurred excepting to pay for the time he had actually worked, together with the fact that the work in which Swam was engaged being admittedly necessary farm work, and that the premium paid for the insurance was based on

". . . the entire compensation earned during the period of this policy by all persons engaged in the business of the insured who are not specifically excepted,"

thus undoubtedly requiring the amount paid in labor

for this repair job to be included in the gross amount on which premiums were figured, require that the judgment of the lower court be affirmed.

MITCHELL, C. J., FULLERTON, MAIN, and HOLCOMB, JJ., concur.