[No. 22540. Department Two. March 24, 1931.]

L. P. LEECH, *as Administratrix of the Estate of L. P. Leech, Deceased, Respondent,* v. SULTAN RAILWAY & TIMBER COMPANY *et al., Appellants.*

G. IRENE HALLIER, *Respondent,* v. SULTAN RAILWAY & TIMBER COMPANY *et al., Appellants.*[1]

*J. A. Coleman* and *Robert Mulvihill,* for appellants. *Stafford Brothers,* for respondents.

MILLARD, J.—The collision on the Pacific Highway near Everett of an automobile operated by G. Irene Hallier, and owned by the estate of L. P. Leech, deceased, with a truck driven by A. L. Jones, resulted in the commencement of two actions (which were consolidated for trial and are consolidated on appeal) against A. L. Jones and his alleged employer, the Sultan Rail-

[1]Reported in 297 Pac. 203.

way & Timber Company. One action was instituted by G. Irene Hallier to recover for personal injuries sustained in the collision; the other was brought by the administratrix of the Leech estate to recover for damages to the automobile. The challenges of the Sultan Railway & Timber Company to the legal sufficiency of the evidence at the close of plaintiffs' cases, and again at the close of all of the evidence, were overruled. In each cause, the jury returned a verdict in favor of the plaintiff and against the defendants. Motion in each cause for judgment notwithstanding the verdict was denied. From judgments entered upon the verdicts, the Sultan Railway & Timber Company has appealed.

Counsel for appellant contend that there is neither evidence nor reasonable inference from the evidence to justify the verdict; that the evidence adduced calls for the conclusion, as a matter of law, that appellant is not liable in damages to the respondents, inasmuch as Jones' relation to appellant at the time of the collision was that of an independent contractor, and not that of an employee or servant.

The rules, followed by us in *Swam v. Aetna Life Ins. Co.*, 155 Wash. 402, 284 Pac. 792, to distinguish an independent contractor from an employee, are as follows:

"The principal consideration in determining the question is the right to control the manner of doing the work. Generally speaking, it may be stated that, if the employee is under the control of the employer, he is a servant or employee and not an independent contractor, but, if in the performance of the work he is not under the control of the employer, he is an independent contractor. However, it is not the actual exercise of the right of interfering with the work, but the right to control which constitutes the test." 31 C. J., p. 474.

"If under the contract the party for whom the work is being done may prescribe not only what the result shall be, but also may direct the means and method by

which the other shall do the work, the former is an employer, and the latter an employee. But if the former may specify the result only, and the latter may adopt such means and methods as he chooses to accomplish that result, then the latter is not an employee, but an independent contractor. So the master test is the right to control the work. And it is this right which probably differentiates service from independent employment. It is to be observed that actual interference with the work is unnecessary—it is the right to interfere that determines." *Kelly's Dependents v. Hoosac Lumber Co.*, 95 Vt. 50, 113 Atl. 818.

That is to say, an independent contractor is one who engages to perform a certain service for another, according to his own manner and method, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result of the work.

What are the facts? The only evidence tending to show the relationship of Jones to appellant was the testimony of Jones and of appellant's foreman, Stanley Toddy. Both were called as witnesses by respondents. Their testimony, summarized, is as follows:

On the date of the collision, Toddy, a pile driver foreman of appellant, went from Everett (where he was preparing to drive some piles for the appellant) to Oso, at which place he was to call to obtain tools for the pile driver. Jones, for two or three years immediately preceding and including the date of the collision, was engaged in the business of buying and selling cedar poles. Jones arrived at Oso shortly after Toddy's appearance at that point. Jones went to Oso for the purpose of inspecting some poles owned by the appellant. The appellant's superintendent could not spare the time to accompany Jones to inspect the poles. The superintendent asked Jones whether he would haul the tools in his (Jones') truck from Oso to a log dump

where Toddy desired the tools delivered. The superintendent offered Jones ten dollars, to be credited to Jones' account with appellant, if he would do the hauling. The offer was accepted by Jones, who, with the assistance of appellant's superintendent, loaded the tools on to the truck. One of the terms of the oral agreement was that the tools would be delivered by Jones that afternoon.

Jones did not know where the log dump was located. Directions as to the route he should travel to arrive at the log dump were given to Jones by the superintendent. The pile driver foreman advised Jones that he would be ahead of Jones on the road; that, at a certain place on the road, he would await the arrival of Jones and point out to him the route he should follow.

That afternoon, Jones started with his truck to deliver the tools. He was later overtaken and passed by Toddy, the pile driver foreman, in his automobile. When Jones arrived near the scene of the collision, he saw Toddy, who was waiting for him as the parties had agreed. Toddy raised his hand, and Jones pulled off of the road preliminary to making a turn. While making the turn, the collision of Jones' truck with the automobile of respondents occurred. There is no evidence that, other than on this occasion, Jones was ever employed by the appellant in any capacity.

It must be conceded that, if Jones had been engaged in general hauling, and had been directed by appellant to haul the tools to a specified place, that of itself would not change the nature of, or convert the special employment into the relation of master and servant.

"The direction to one engaged in 'general hauling' to haul property to or from a specified place does not change the nature of, or convert a special employment into the general relation of master and servant; a man does not become answerable for the negligence of a taxicab driver, or of a carrier merely by specifying

where he wishes to go or have his property delivered."
*Wright v. Wilson Co.,* 83 Pa. Super. Court 487.

Whether Jones was or was not engaged in the business of general hauling, would not be the decisive factor. The fact that one not engaged in the business of general hauling is employed to deliver goods may be indicative of service rather than of independence of employment. That would be a circumstance to be considered with other facts and circumstances of the case in determining the status of the truck driver. The fact that Jones, as a truck driver, performed service for others would be a circumstance indicating independence of employment, but it would not be by any means conclusive.

Whether Jones was engaged in the business of general hauling, or whether he owned a truck and utilized it solely for the hauling of poles he bought and sold, would not be determinative of the question whether his status was that of an independent contractor or employee. Among all the circumstances bearing upon the determination of the question whether Jones was an independent contractor or an employee, the right of the appellant to control him is the most decisive.

"An independent contractor is one who renders service to another in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. If the employer may control the manner of doing the work, the relation of master and servant exists, no matter what terms may have been agreed upon as to the method of payment." *Simila v. Northwestern Imp. Co.,* 73 Wash. 285, 131 Pac. 831.

"In Shearman & Redfield on Negligence it is said: 'The true test of a "contractor" would seem to be that he renders the service in the course of an independent occupation, representing the will of the employer only

as to the result of his work, and not as to the means by which it is accomplished.' 6th ed. § 164.

''Respondents emphasize the phrase 'in the course of an independent occupation,' and argue that the decedent was not pursuing an independent occupation because he was not doing hauling for any one else, and was not permitted so to do under the provisions of his contract for the term thereof. This is non sequitur. The question whether or not one is pursuing an independent occupation does not depend upon whether he is serving one person or many persons, but whether in the pursuit of his occupation he is acting upon his own behalf or as the servant of another. This is pointed out by the authors last quoted from in the same section: 'If he never serves more than one person there is usually a presumption that he has no independent occupation; but this presumption is not conclusive. A single large railroad company, for example, might find work enough for a contractor to occupy his whole lifetime, yet leave him to work in perfect independence, accepting the results of his labor without ever interfering with his choice of the mode and instruments of working. On the other hand, one may have many employers within a short space of time, yet be a mere servant to each of them in turn. . . . The one indispensable element to his character as an independent contractor is that he must have contracted to do a specified work and have the right to control the mode and manner of doing it.'' *Fidelity & Cas. Co. v. Industrial Accident Comm.,* 191 Cal. 404, 216 Pac. 578, 43 A. L. R. 1304, 1308.

Jones was independent of the control of the appellant as to the manner in which he should perform the service of delivering the tools at the log dump. The appellant did not supervise the work of delivering the tools. An employee of appellant awaited, it is true, at a turn of the road to direct Jones so that he would know the point at which the tools should be delivered. That accommodation to Jones can not be construed as supervision or control.

That the tools were to be delivered that afternoon does not change the relationship of independent contractor to that of a servant or employee. A truck driver is employed to deliver a trunk at a depot in the afternoon, or at a certain hour, in order that the baggage may be carried on the same train on which the owner is traveling. That would in no sense convert the special employment into the general relation of master and servant. Nor would the fact that the owner of the trunk assisted the truck driver in loading the trunk on to the vehicle, change the nature of the employment. The payment of ten dollars was not to be in cash but was to be placed to the credit of Jones' account with appellant. Neither is the method of payment or the right to discharge the decisive test. The question is whether Jones was, in fact, independent, or subject to the control of the appellant for whom he was delivering the tools.

"In *Messmer v. Bell, etc., Co.* [133 Ky. 19, 117 S. W. 346, 19 Ann. Cas. 1] the court says: 'An "independent contractor" is one who is independent of his employer in the doing of his work, and may work when and how he prefers. A "servant" is one who is employed by another and is subject to the control of his employer.'

"In determining whether the relation is that of master and servant or that of proprietor and independent contractor, the mode of payment is not the decisive test; the test lies in the question whether the contract reserves to the proprietor the power of control over the employee. 1 Thomp. Neg., § 629.

"If work is done under a general employment, and is to be performed for a reasonable compensation or for a stipulated price, the employer remains liable, because he retains the right and power of directing and controlling the time and manner of executing the work, or of refraining from doing it, if he deems it necessary or expedient. *Brackett v. Lubke,* 4 Allen (Mass.) 138, 81 Am. Dec. 694.

"The latter cases do not make either the mode of

payment or the right to discharge the decisive test, but look to the broader question whether the employee is in fact independent or subject to the control of the person for whom the work is done, as to what should be done and how it should be done. It is not easy to frame a definition of the term 'independent contractor' that will happily classify each laborer in the multifold conditions of the modern laborer's life.'' *In re Dobson*, 124 Me. 305, 128 Atl. 401, 42 A. L. R. 603.

There is no evidence showing, nor evidence from which it may be reasonably inferred, that appellant had any control or supervision of Jones in the operation of the car, or the manner in which delivery of the tools was to be effected. If, from the evidence, it were doubtful whether control and direction in respect to the details of the work were reserved, the question would be one of fact to be resolved by the jury. No question of fact for determination of the jury was presented by the evidence in the case at bar. Under the facts, we can not hold otherwise than that, as a matter of law, Jones was an independent contractor; therefore, the judgments are reversed and the causes remanded with direction to dismiss the actions.

MITCHELL, FULLERTON, and BEALS, JJ., concur.

MAIN, J. (dissenting)—In my opinion, the question of whether Jones was an employee or an independent contractor was one of fact for the jury, and not one of law for the court, and for this reason I dissent.