[No. 27177. Department One. March 24, 1939.]

JOHN H. HUBBARD, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al., Respondents.*[1]

*Kenneth Durham,* for appellant.

*The Attorney General, J. A. Kavaney* and *T. H. Little, Assistants,* for respondent Department of Labor and Industries.

*Little & Leader,* for respondent Pacific Coast Coal Company.

STEINERT, J.—Appellant, John H. Hubbard, lost his left hand through injury sustained while operating a power saw in a fuel yard. His claim for compensation was rejected by the department of labor and industries. On appeal to the superior court, where

[1]Reported in 88 P. (2d) 423.

trial without jury was had, solely upon the departmental record, the court affirmed the order of rejection. This appeal is from the judgment of the superior court.

There is but one question presented here, namely: Was appellant a workman within the definition of the workmen's compensation act of this state? The trial court held that he was not.

The facts as found by the court are these: Some time prior to January, 1937, one William Richardson, a W. P. A. worker, owning a wood saw which had been constructed upon an old automobile chassis, decided to engage in the business of sawing wood for various fuel companies located in the Rainier Valley district, in Seattle. Upon Richardson's solicitation, appellant Hubbard, also a W. P. A. worker, was induced to enter and establish the business. The two men purchased a new blade and generator and installed them upon the apparatus. Hubbard owned an automobile, which he agreed to furnish for transporting the sawing device from place to place as jobs were secured. To operate the wood saw, the services of three men were required. The two associates prevailed upon one McDonald, likewise a W. P. A. worker, to join them in the venture. All three of the men were experienced wood cutters and sawyers.

The three men verbally agreed with each other that the receipts of the business, after payment of the expenses of operation, maintenance, and depreciation of the apparatus, should be divided equally among them. With this understanding, they sought employment in the community, holding themselves out as partners ready and willing to saw wood for any one engaged in the fuel business.

During the first three months in 1937 they secured jobs, at various times, with the owners of five different

fuel establishments, including the Pacific Coast Coal Company, intervener herein and owner of a number of fuel yards in the city of Seattle, among which was one located on Rainier avenue. In the performance of these jobs, the three men did all the work incident to the operation, without any directions or supervision from the parties by whom they were engaged. All of the men were equally conversant with the various duties connected with the operation, and, for their own convenience, they frequently exchanged positions in the conduct of the work. They purchased the gas for the operation of the saw, made all the repairs at their own expense, and transported the apparatus from place to place as jobs were available. They worked according to their own time and inclination, commencing in the morning, stopping for lunch, and quitting in the evening as they desired, without any direction or control from any one.

Compensation for their work was figured on the basis of the number of cords of wood sawed on the particular job. At first they charged seventy-five cents a cord; this was later increased to eighty-five cents. As each job was finished, collections were made by any one of the three from the particular employer. From the total amount thus collected, there was deducted the sum of thirty-one cents per cord to pay the necessary expenses, and the balance of fifty-four cents was divided so as to give each man eighteen cents per cord. Whenever one of the men was unable to work, they procured a substitute, who came in on the same basis as the original three.

During the period of the partnership arrangement, the parties completed several wood-sawing jobs at the fuel yard of Pacific Coast Coal Company in the manner and under the conditions already stated. At the beginning of each job, the company indicated to the men

the amount of wood to be sawed, the length of the cut, and the place where the sawed wood was to be piled. But the company exercised no supervision or control over the men as to the means or method of doing the work.

During one of the jobs at the Pacific Coast Coal Company's yard, appellant, while feeding the saw, sustained the injury for which compensation is now sought.

The facts as thus found by the court are amply sustained by the evidence. There was also evidence of some additional facts which may be mentioned. The work of sawing was done on Saturdays, and at other odd times, when the three men were not engaged in W. P. A. work. Upon one occasion when the men were negotiating for a job at another fuel yard, they were asked by the proprietor whether they had industrial insurance, and appellant then stated that they did not require insurance because they were a partnership.

In the various jobs at the Pacific Coast Coal Company, they were engaged and directed to cut either an approximate number of cords or else an amount sufficient to fill a near-by shed. Upon one occasion, while there, they worked on Sunday, or a holiday, in order to complete the particular job; this was upon their own volition. On another occasion, they quit their work temporarily in order to complete a job at another fuel yard. Although there was no definite agreement as to the right to terminate any particular job, it was apparently believed, or assumed, both by the coal company and by the three men, that either party could terminate a job at any time.

With these facts before us, we proceed to the question of law presented relative to the legal status of appellant at the time of his injury.

Rem. Rev. Stat., § 7675 [P. C. § 3470], which is part of the workmen's compensation act, provides

by definition that: "Workman means every person in this state, who is engaged in the employment of any employer . . ." In so far as our workmen's compensation act is concerned, the rules for determining the existence of the relation of employer and employee are the same as those applied at common law for determining the relation of master and servant. To create the relation of employer and employee, or master and servant, there must be an express contract or acts such as will show that the parties recognize one as the employer and the other as the employee. *Brewer v. Department of Labor & Industries,* 143 Wash. 49, 254 Pac. 831; *Hinds v. Department of Labor & Industries,* 150 Wash. 230, 272 Pac. 734, 62 A. L. R. 225.

An independent contractor is one who, while rendering service in the course of an independent occupation, represents the will of his employer only as to the result of the work, and not as to the manner or means by which it is accomplished. *Simila v. Northwestern Imp. Co.,* 73 Wash. 285, 131 Pac. 831; *North Bend Lumber Co. v. Chicago, M. & P. S. R. Co.,* 76 Wash. 232, 135 Pac. 1017; *Johnston v. Seattle Taxicab & Transfer Co.,* 85 Wash. 551, 148 Pac. 900; *Leech v. Sultan R. & Timber Co.,* 161 Wash. 426, 297 Pac. 203; *Hollingsworth v. Robe Lumber Co.,* 182 Wash. 74, 45 P. (2d) 614; *Sills v. Sorenson,* 192 Wash. 318, 73 P. (2d) 798.

The ultimate test by which it is determined whether the relation is that of employer and employee or that of principal and independent contractor is to inquire whether or not the employer retained the right, or had the right under the contract, to control the manner of doing the work and the means by which the result was to be accomplished. *Larson v. American Bridge Co.,* 40 Wash. 224, 82 Pac. 294, 111 Am. St. 904; *Glover v. Richardson & Elmer Co.,* 64 Wash. 403,

116 Pac. 861; *Hinds v. Department of Labor & Industries,* 150 Wash. 230, 272 Pac. 734, 62 A. L. R. 225; *Swam v. Aetna Life Ins. Co.,* 155 Wash. 402, 284 Pac. 792; *Hollingsworth v. Robe Lumber Co.,* 182 Wash. 74, 45 P. (2d) 614; *Sills v. Sorenson,* 192 Wash. 318, 73 P. (2d) 798. These cases all hold that the chief, and most decisive, factor in determining whether the relationship is that of employer and employee or that of principal and independent contractor is the right of control over the work or thing to be done.

This power of control is variously spoken of in the different cases, as the primary, master, dominant, decisive, supreme, vital, final, real, or most significant, test, or as the main, principal, determining, or generally controlling, factor or consideration. 71 C. J. 450. Then there are other so-called tests, or rather considerations or factors, which relate to control, and have either a direct bearing or an inferential significance with respect to that question. Among the latter are the nature of the business, the time, place, duration, quantity, and nature of the work performed, the skill and supervision required, the furnishing of equipment, materials, and supplies, the payment of the necessary expenses, the basis of compensation for the work, the right to hire and discharge assistants, and the right to terminate the employment.

Each of these elements, and many others that might be named, may be of more or less importance and value in a particular case, according to the facts and circumstances present, but none of them is conclusive in determining the nature of the relationship. Back of them all is the question as to who has the right to control the manner of doing the work and the means by which the ultimate result is accomplished.

The inferential circumstance most helpful to appellant in this case, and the one on which he has chiefly

relied, is that the Pacific Coast Coal Company and the partnership of which appellant was a member believed or assumed that the arrangement between the company and the partnership could have been terminated at any time. Indeed, this court has recognized and approved the force of the statement contained in 14 R. C. L. 72, § 9, to the effect that the power of the employer to terminate the employment at any time is incompatible with the full control of the work usually enjoyed by an independent contractor. *Burchett v. Department of Labor & Industries*, 146 Wash. 85, 261 Pac. 802, 263 Pac. 746; *Swam v. Aetna Life Ins. Co.*, 155 Wash. 402, 284 Pac. 792. However, in the same section of R. C. L. it is stated:

"The relation between the parties is, however, to be determined from all the surrounding indicia of control, and the sole circumstance that the employer has reserved the right to terminate the work and discharge the contractor does not necessarily make the contractor a mere servant."

In *Machenheimer v. Department of Labor & Industries*, 124 Wash. 259, 214 Pac. 17, wherein the trial court had expressly found that the employer and the one employed each had the right to terminate the work at any time, we nevertheless held that, under all the facts shown, the relationship was one of independent contractor, and not one of employer and employee within the meaning of the workmen's compensation act. In *Leech v. Sultan R. & Timber Co.*, 161 Wash. 426, 297 Pac. 203, it is stated that "Neither is the method of payment or the right to discharge the decisive test."

In the case at bar, the right to terminate the employment is not to be taken in the full sense contended for by appellant in his brief. While either of the parties could have terminated further business relationship by declining to offer or refusing to accept fur-

ther jobs, and while both by mutual consent could have terminated a particular job at any time during its performance, neither of them without the consent of the other could lawfully have terminated a particular job during the course of its progress, because each of the jobs was founded upon a specific agreement to saw a specified amount of wood for an agreed price. So, even though the parties may have thought they had the power to terminate a particular job, which was never exercised, in law they did not have such power.

Upon the following factors, established by the evidence, we conclude that the relationship was one of principal and independent contractor and not one of employer and employee within the workmen's compensation act: (1) Appellant and his associates established an independent business of sawing wood; (2) they were partners operating a business rather than persons supplying individual service; (3) the jobs were obtained through agreements made between the Pacific Coast Coal Company and the partnership; (4) the men owned and supplied the necessary machinery and equipment, and themselves made all repairs and bore the necessary expense of operation; (5) they worked upon their own time; (6) they provided substitutes for themselves when occasion required; (7) they had full control of the operation without supervision or direction of the Pacific Coast Coal Company; (8) the company was concerned only with the result, not with the manner or means of accomplishing it; (9) payments were made by the Pacific Coast Coal Company, not to the individuals in proportion to the amount of work done by each, but to the partnership as an entity, on the basis of the result of the work done; and (10) the money received was allocated by the partners partly to the individuals equally and at a fixed rate, and partly to those who owned

the equipment, for supplies, maintenance, and depreciation of the machinery.

Among the cases cited by appellant, the nearest in point, we think, are *Burchett v. Department of Labor & Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746; and *Erickson v. Department of Labor & Industries,* 185 Wash. 618, 56 P. (2d) 713. Among those cited by respondent, the nearest in point are *Machenheimer v. Department of Labor & Industries,* 124 Wash. 259, 214 Pac. 17; *Fox & Co. v. State,* 166 Wash. 510, 7 P. (2d) 961; and *Hammerschmith v. Department of Labor & Industries,* 177 Wash. 13, 30 P. (2d) 649. We have not discussed these cases in detail, for the reason that while in some respects they bear a similarity to the case at bar, and are therefore persuasive, their dissimilarity from it is so marked that none of them can be said to be controlling here.

The judgment is affirmed.

BLAKE, C. J., MAIN, ROBINSON, and JEFFERS, JJ., concur.