[No. 22959. Department Two. February 4, 1932.]

FOX & COMPANY et al., Respondents, v. THE STATE OF WASHINGTON, Appellant.[1]

*The Attorney General* and *Chas. O. Flint,* for appellant.

*Roberts, Skeel & Holman* and *Howard A. Hanson,* for respondents.

[1]Reported in 7 P. (2d) 961.

HOLCOMB, J.—This appeal grows out of two cases consolidated for trial and appeal.

On about July 25, 1929, the state let a highway contract to certain contractors by the name of Von der Hellen & Pierson, who subcontracted the clearing and grading to Frank Fox. Von der Hellen & Pierson and Fox then subcontracted the clearing and burning on the right of way to George Karsel and seventeen or eighteen others, who constituted a co-partnership for the purpose of doing the work of clearing and burning on the right of way.

After they had completed the work, Karsel et al., had a dispute with Fox as to its completion, and also as to the right of Fox to withhold from the amount due them the sum of $926.05, demanded by the state for industrial insurance claimed to be owing to the state as premiums on extrahazardous operations. Two suits were thereupon commenced in the superior court, one by Karsel & Co. and the other by Fox & Co. et al. The state was made a party to each suit, and filed demurrers in each. The demurrers were overruled, and the state filed its cross-complaint praying judgment from Von der Hellen & Pierson in the sum of $926.05. After the trial of the consolidated cases, the lower court announced its decision that Karsel & Co. were independent contractors, and no premiums were due the state.

There is no controversy as to the facts. Karsel & Co. were paid at the contract price of five hundred dollars per acre. Karsel superintended the work, and the money was divided between his partners, when they finished the job, according to the time each man put in on the work. Karsel kept a time book himself, so that he would know how many days everybody worked. No one worked on this clearing and burning job other than Karsel and his associates, or partners.

Fox had no right to discharge any of them, and exercised no supervision over the work except to walk over it and see how it was progressing. He had no authority to tell them how to do the work. Fox employed none of the men on that job. Under their contract, they used Fox's tools, axes, saws and peavies. They kept the tools in condition, and had sole charge of them until the end of the job. The only direction that Fox ever exercised was to direct what work should be done first in order to keep ahead of the other contractors. This was in accordance with their contract with Fox—that they would prosecute the work so as to keep out of his way.

The original contract between the state and Von der Hellen & Pierson contains a provision that:

"The contractor shall not let, assign, or transfer this contract, or any interest therein or any part thereof, without the consent in writing of the state highway engineer.

"The contractor shall give his personal attention to the work at all times and shall be present, in person or by duly authorized representative, on the site of the work continually during its progress and shall receive instructions from the state highway engineer. Any sub-contractor shall be considered the agent of the contractor and the latter shall be responsible for all work and material furnished and any indebtedness incurred by such agent."

Another provision in the original contract was to the effect that incompetent or negligent employees or agents should be forthwith discharged by the contractor upon the written request of the state highway engineer, and failure to comply with such request should be sufficient grounds for the termination of the contract.

To support its contentions that the demurrer should have been sustained to the complaint in this cause, and

that the court erred in holding that Karsel & Co. were independent contractors and not workmen, appellant cites and relies upon the following statutory provisions.

Rem. Comp. Stat., § 7676, which defines "land clearing" as extrahazardous labor, also provides that:

"In computing the pay-roll the entire compensation received by every workman employed in extrahazardous employment shall be included, whether it be in the form of salary, wage, piecework, overtime, or any allowance in the way of profit-sharing, premium or otherwise, and whether payable in money, board, or otherwise."

Rem. Comp. Stat., § 7685, reading:

"No employer or workman shall exempt himself from the burden or waive the benefits of this act by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void."

Rem. 1927 Sup., § 7692, which is very lengthy, is also quoted in part, as follows:

"Whenever the state, county, any municipal corporation or other taxing district shall engage in any extrahazardous work, or let a contract therefor, in which workmen are employed for wages, this act shall be applicable thereto. The employer's payments into the accident fund shall be made from the treasury of the state, county, municipality or other taxing district. If said work is being done by contract, the pay-roll of the contractor and the subcontractor shall be the basis of computation, and in the case of contract work consuming less than one year in performance the required payment into the accident fund shall be based upon the total pay-roll. The contractor and any subcontractor shall be subject to the provisions of the act, and the state for its general fund, the county, municipal corporation or other taxing district shall be entitled to collect from the contractor the full amount payable to the accident fund, and the contractor, in

turn shall be entitled to collect from the subcontractor his proportionate amount of the payment. . . .

"The provisions of this act shall apply to all extra-hazardous work done by contract; the person, firm or corporation who lets a contract for such extrahazardous work shall be responsible primarily and directly for all payments due to the accident fund and medical aid fund upon the work. The contractor and any subcontractor shall be subject to the provisions of this act, and the person, firm or corporation letting the contract shall be entitled to collect from the contractor the full amount payable to the accident fund and medical aid fund, and the contractor in turn shall be entitled to collect from the subcontractor his proportionate amount of the payment."

We agree with respondents that the pertinent part of that section of the statute is that,

"If said work is being done by contract, the pay-roll of the contractor and the subcontractor shall be the basis of computation,"

There was no pay roll for Karsel & Co. They hired no men, but did all the work themselves and divided the proceeds of the contract among themselves. While the statute contemplates that clearing and burning on a state highway right of way is an extrahazardous operation, it does not apply when the person or persons had no pay roll. Although there were seventeen or eighteen of them they were not employees, but independent contractors.

Appellant cites the following cases to sustain its argument that these men were employees and not independent contractors: *Dyer Brothers Golden West Iron Works v. Pederson,* 112 Wash. 390, 192 Pac. 1002, 197 Pac. 622; *Machenheimer v. Department of Labor and Industries,* 124 Wash. 259, 214 Pac. 17; *Burchett v. Department of Labor and Industries,* 146 Wash. 85, 261 Pac. 802, 263 Pac. 746; *Swam v. Aetna Life Insurance Co.,* 155 Wash. 402, 284 Pac. 792; *Wilson v.*

*Times Printing Co.,* 158 Wash. 95, 290 Pac. 691; *Nettleship v. Shipman,* 161 Wash. 292, 296 Pac. 1056.

The several cases above cited dealt with various phases and with refined distinctions between employees and independent contractors, but in none of them was it held that, where the principal had control or the right to control the work, the person performing the work was anything other than an employee. The *Machenheimer* case, *supra,* is the case most similar to this, where the workmen were boiler repairers, repairing boilers for a logging company, but the pay checks on the completion of any job were made out to the copartnership of which the deceased was a member, which firm designated which one of them should do the work. We held that the partnership were independent contractors and not employees.

The *Burchett* case, *supra,* where the owner of a truck was engaged to haul logs, and there was no certain quantity of logs to be hauled or any certain time for delivery, and the engagement was personal, the work to be done by the laborer with his truck only, the compensation to be by the thousand feet rather than by the day and the laborer could be dismissed at any time, was a very close and doubtful case, and was consequently decided in favor of the laboring man under the industrial insurance act to the effect that he was an employee and not an independent contractor. In that case, it was pointed out that

"No definite quantity of logs was specified, respondent thus being free to quit at any time and Christensen being free to discharge him at will."

The *Dyer* case, *supra,* contained nothing to the contrary, and it does decide in the decision on rehearing that the provision in the contract to the effect that

"  .  .  .  no contract shall be sublet except for the furnishing of material without the previous consent of the city council,"

could not invalidate a subcontract, as between the parties to it, until the principal contract was terminated by the city for want of consent. That decision applies here to the contention of appellant that the trial court erred in denying it the right to introduce proof to show that no written consent had ever been given for any assignment of the highway work. Under the *Dyer* decision, that was immaterial.

We have no doubt that respondents were independent contractors and not employees, and were exempt from the operation of the workmen's compensation act, as the trial court decided.

The judgment is affirmed.

TOLMAN, C. J., MAIN, BEALS, and MILLARD, JJ., concur.