[No. 26034. Department One. April 13, 1936.]

ANNA ERICKSON, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

[1] Reported in 56 P. (2d) 713.

*Verne C. Henry* and *Wm. A. Johnson,* for appellant.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

TOLMAN, J.—This case comes here on an appeal by the plaintiff from a judgment of the trial court dismissing her appeal from an order of the joint board of the department of labor and industries, which order sustained an order of the supervisor rejecting the plaintiff's claim for a widow's pension upon the ground that the claimant's deceased husband was not an employee within the meaning of the industrial insurance law at the time he received the injuries which caused his death.

The one and only question presented is whether John Erickson, the deceased husband, was an employee or workman under the compensation act at the time he received the fatal injuries, or was an independent contractor. The question is one of fact, and the fact must be determined from the whole record, including the departmental record introduced on the trial below.

Without reciting details, the following may be taken as the ultimate facts which we find to be clearly established.

The deceased husband of appellant, John Erickson by name, on December 1, 1931, while engaged in cutting pulp wood, was struck by a falling tree and thereby received injuries which caused his death in a few hours.

In the summer and fall of the year 1931, one Oscar Sandman was engaged in hauling and selling pulp wood to a mill in Everett. The pulp wood handled by Sandman was produced by men working more or

less in groups, who were paid for the wood cut by the cord, at first at the rate of $2 and later at the rate of $2.25 per cord. Sandman purchased the stumpage, or the right to cut the standing timber, told the men what timber to cut, and gave them specific directions as to all details, so that the wood, when cut and piled according to the directions given, would be marketable as pulp wood. The wood so cut and piled, Sandman took, hauled away and sold. He received the proceeds and paid the workmen each Saturday for the amount produced at the agreed rate. Sandman supervised the cutters at all times, directing them how and in what lengths to cut, how to peel the bark and how to cut back the knots; he furnished tools for splitting and sizing to many, if not all, of the men, and he moved the men from place to place as he deemed advisable. Sandman also discharged, or threatened to discharge, the men who failed to comply with his directions.

If the men had worked singly instead of in groups, the facts we have mentioned would present a perfect picture of workmen engaged in piece work, or paid by the piece instead of by the hour or day. The fact that, for convenience or to facilitate the work, they formed groups, and the money earned by each group was handed by Sandman to one with directions to make proper distribution among the members of the group, does not seem to affect the situation or lessen Sandman's right to direct and control all of the details of the work.

Erickson, the deceased husband, went to work for Sandman the latter part of August or the first of September, 1931, under the conditions already described. With him was a son, and the two worked as a group until some time later, when another son

joined the group, and the three worked together until Erickson's death.

Nothing was said or done by any one in any way inconsistent with the idea that these wood cutters were workmen paid by the cord until shortly before Erickson's death, at which time Sandman presented to him, and to others likewise employed, a writing which the men were requested to and did sign and date. The writing with the signatures and the dates when signed is as follows:

"AGREEMENT

"BETWEEN Oscar Sandman and the undersigned men that the said men, whose names appear attached hereto will cut pulp wood in accordance with the specifications of the Puget Sound Pulp and Timber Co., and sell the same to the said Oscar Sandman at a price of $3.25 per cord, payments to be made weekly as returns are received from the Puget Sound Pulp and Timber Co.

"It is further agreed and understood that the said pulp wood cutters will pay to the owners of the timber the sum of $1.00 per cord for such pulp wood and the said Oscar Sandman is hereby authorized to hold out from the amount due each cutter an amount of $1.00 per cord for the benefit of the timber owners and in settlement of their account.

"1931

Oct. 30   Marcus Stein
Nov.  2   John Erickson
Nov.  4   Ole Olson
Nov. 17   Geo. M. Trousdale"

No change was made in the manner of carrying on the work after this writing was signed. Sandman asserted that this writing was prepared and signed to protect him as a non-employer, and others assert that its purpose was to enable Sandman to escape the burdens cast upon employers by the industrial insurance act. At best, the writing or agreement is unilateral in its terms, not signed by Sandman, and of

course could not bind those who did sign it. If it be considered as an admission against interest, still it is of little force, because, as explained by the surrounding circumstances and conditions, it indicates no more than a good natured gesture on the part of the signers to please the man by whom they were employed. However viewed, the writing seems to us clearly insufficient to establish that Erickson was an independent contractor.

The facts distinguish this case from *Machenheimer v. Department of Labor & Industries,* 124 Wash. 259, 214 Pac. 17; *Fox & Co. v. State,* 166 Wash. 510, 7 P. (2d) 961, and *Hammerschmith v. Department of Labor & Industries,* 177 Wash. 13, 30 P. (2d) 649, upon which cases the respondent relies. More nearly in point on the facts is the case of *Park v. Department of Labor & Industries,* 184 Wash. 472, 51 P. (2d) 620.

We hold as a fact that the deceased was a workman and under the industrial insurance act. Therefore, the judgment of the trial court is reversed, with instructions to reverse the order of the joint board and to remand to the department for further proceedings.

MILLARD, C. J., MITCHELL, STEINERT, and GERAGHTY, JJ., concur.