[No. 35244.   Department One.   March 31, 1960.]

CARRIE CAMP, *Respondent*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES *et al.*, *Appellants.*[1]

[1]Reported in 350 P. (2d) 641.

*The Attorney General* and *Michael J. Cronin, Assistant,* and *Daniel L. Collins,* for appellants.

*Phillip Skok* and *Theodore M. Ryan,* for respondents.

HUNTER, J.—Richard Camp was fatally injured in a logging truck accident on February 4, 1958, at Colville, Washington. On March 11, 1958, his surviving wife filed a claim for a widow's pension with the department of labor and industries, alleging that at the time of her husband's death he was engaged in extrahazardous employment and was an employee of one Ed Chester. On March 17, 1958, the supervisor of industrial insurance issued an order rejecting the claim on the grounds that "the deceased was not an employee of Ed Chester but that he was an independent contractor and had not elected to seek coverage under the Compensation Act covering his operations." The respondent widow appealed to the board of industrial insurance appeals. The appeal was allowed, and after a hearing, the board sustained the action of the supervisor. Mrs. Camp appealed the board's decision to the superior court for Stevens county. The trial court reversed the decision of the board and entered an order directing that the respondent's claim for a widow's pension be allowed. The department has appealed to this court.

The sole issue raised by appellant's assignments of error is whether the deceased at the time of the accident was an employee of Ed Chester, or whether he was an independent contractor.

An independent contractor has been defined by this court on numerous occasions. In *Johnston v. Seattle Taxicab & Transfer Co.,* 85 Wash. 551, 148 Pac. 900 (1915), we used the following language:

". . . The general rule is that an independent contractor is one who renders services to another in the course

of an independent occupation, representing the will of his employer only as to the result of the work and not as to the means by which it is accomplished; the chief consideration being that the employer has no right to control as to the mode or manner of doing the work; but a reservation by the employer of the right to supervise the work for the purpose of determining whether it is being done in accordance with the contract does not affect the independence of the relation. [Citations omitted.]"

■ In *Hubbard v. Department of Labor & Industries,* 198 Wash. 354, 88 P. (2d) 423 (1939), we said:

"An independent contractor is one who, while rendering service in the course of an independent occupation, represents the will of his employer only as to the result of the work, and not as to the manner or means by which it is accomplished. [Citations omitted.]

"The ultimate test by which it is determined whether the relation is that of employer and employee or that of principal and independent contractor is to inquire whether or not the employer retained the right, or had the right under the contract, to control the manner of doing the work and the means by which the result was to be accomplished. [Citations omitted.] These cases all hold that the chief, and most decisive, factor in determining whether the relationship is that of employer and employee or that of principal and independent contractor is the right of control over the work or thing to be done."

Also, see *Rapp v. Ellis,* 14 Wn. (2d) 659, 129 P. (2d) 545 (1942).

With the above definition and the test to be applied, we will examine the facts of the instant case.

At the hearing before the board of industrial insurance appeals, only one witness testified, Ed Chester, who was called by the respondent as the alleged employer of Richard Camp, deceased. The departmental record discloses that Ed Chester was engaged in the logging business. At the time of the fatal accident, he had a contract with Draper Lumber Company to supply the logs necessary for the operation of its mill at Colville. Chester was required to cut timber owned by the company in the woods near Colville and deliver it to the mill; he was paid a certain sum

for each thousand feet of logs delivered. All phases of the logging operation were the responsibility of Chester. He had seven men on the payroll to whom he paid an hourly wage; he deducted federal withholding and social security taxes from their wages and paid premiums for industrial insurance and unemployment compensation. Chester owned one logging truck which one of his employees operated.

The deceased Richard Camp, whom we will refer to as Camp, owned a truck and trailer, a complete outfit for hauling logs, which was in good condition and valued at between nine and ten thousand dollars. As far as the record discloses, he personally operated his own equipment.

In late January of 1958, Camp commenced hauling logs for Chester with this equipment. He received seven dollars for each thousand board feet his truck delivered to the mill. He paid all operating and maintenance expenses on his own truck. His truck was loaded in the woods by Chester's employees. It was to be available each day with a driver, as his turn came for loading. There was only one road over which the logs could be transported to the mill. The agreement was terminable at the will of either party. No industrial insurance or other employment premiums were paid by Chester for Camp, nor did Camp elect to seek coverage under the act by paying his own premiums. Camp had received approximately one hundred twenty dollars per day, on the basis of the quantity of logs hauled. On the seventh day the fatal accident occurred, while unloading logs at the mill.

■ Appellant contends the essence of the agreement was Chester hiring Camp's logging truck and *a driver*. He did not care who did the driving as long as the truck was made available to haul logs. This contention is clearly supported by the following testimony in the record:

"Q. And what was the arrangement you made with Mr. Camp at that time? A. Well, I agreed to hire his truck to deliver these logs to the mill, at so much per thousand. Q. The truck, of course, included Mr. Camp, is that correct? A. Included a driver. Q. And did you have the agreement with Mr. Camp that he would drive the truck? A. No,

I had no agreement as to who would drive it. . . . Q. Now, when you and he entered into this oral agreement to haul the logs, did you specifically state who was to drive the truck? A. No. Q. He did all the driving himself? A. Yes. Q. Did you have any particular voice in that, or did you have any feeling as to who was to drive the truck, or did you care? A. I didn't care. Q. You were interested in the truck to haul the logs to the mill? A. That is right. . . . Q. I have two questions. When you made this oral arrangement or agreement with Mr. Camp in Colville that you have mentioned, did you hire Mr. Camp, or did you hire Mr. Camp and his truck, or did you hire his truck, or did you hire his truck and a driver? Which of those four things did you hire? A. Actually hired the truck and a driver. Q. Is that the agreement that he worked under, and was working under on February 4, 1958? A. That is right. . . . Q. There wasn't any specific request that Mr. Camp drive the truck? A. No. Q. Just as long as the truck was up there with the driver? A. That is right. . . ."

The appellant further contends Chester did not have the control over Camp in the hauling of the logs essential to an employer-employee relationship. We agree. The record shows the only control exercised over Camp by Chester was that of designating when the hauling was to be done, where the truck was to be loaded, and where the load was to be delivered. The status of the parties under the agreement is appropriately expressed in the language of the decision and order of the departmental board.

". . . This is no more 'control' than that exercised by any shipper over a common carrier, so that, in effect, the agreement was not a contract of employment, but a contract for transportation of goods. . . ."

The respondent relies on the case of *Burchett v. Department of Labor & Industries,* 146 Wash. 85, 261 Pac. 802 (1927). In that case the respondent agreed to haul logs for one Christensen, furnishing his own truck and gas, and his own services, and was to be compensated therefor at the rate of four dollars per thousand feet for all logs hauled. No definite quantity of logs was specified, respondent thus being free to quit at any time and Christensen being free to discharge him at will. From the time of the commence-

ment of the work, it was continuous, respondent working until he was hurt, and hauling for no other person than Christensen during the period. Respondent hauled only the logs which were loaded upon his truck by other employees of Christensen in the woods, and was not permitted to haul any other logs. He unloaded the logs at a place designated by Christensen. Respondent was obliged to report at a certain time in the morning, when the other employees of Christensen were at hand to load the logs upon his truck. He was not permitted to carry any passengers upon his truck during the hauling, nor permitted to leave the logs on the truck overnight. We stated:

"It will be observed that, in this case, there was no definite result to be accomplished; that is, there was no certain quantity of logs to be hauled or any certain time within which any delivery was to be made. The hiring seems to have been personal. Respondent probably had no right to employ another to take his place to do the hauling with his own truck. Even though the compensation was to be by the thousand feet rather than by the day, the manner of compensating is only one element to be considered in determining whether one is an independent contractor or an employee.
"   .   .   .
"In this case, while it is by no means free from doubt, it would appear that there was sufficient control by the employer over the method and details of doing the work to constitute respondent an employee or servant.

"While we have read the great many cases cited by the parties in their briefs, and others to which they referred, the confusion is so great and the distinctions so intricate that we see no benefit in citing or discussing them. The case seems to be within the rules stated in R. C. L., *supra* [12 R. C. L., 74-75; 14 R. C. L., 68-72].
"   .   .   .
"We think, in this case, the respondent should be classed as a 'piece worker' being paid by the piece and rendering personal services for an employer, and therefore within the meaning of the workmen's compensation act, a workman."

The primary distinguishing features of the *Burchett* case from the facts of the instant case are that the hiring was

not personal, and there was no limitation as to the manner of the use of the truck, as long as the logs were loaded and delivered.

Our comments are extensive regarding the *Burchett* case, in *Hammerschmith v. Department of Labor & Industries,* 177 Wash. 13, 30 P. (2d) 649 (1934), wherein we said:

"It will be observed from the facts and excerpt from the opinion that the *Burchett* case turned upon the question of control, the court reaching the conclusion that there appeared in the case sufficient control by the employer over the method and details of doing the work to constitute the respondent an employee or servant. It is apparent in the case before us that the facts bear more decidedly toward the view that the appellant was a contractor, rather than an employee.

"In the *Burchett* case, the employment was personal. As said by the court, it was probable that the claimant had no right to employ another to take his place to do the hauling with his own truck. There is nothing suggestive of a contract for hauling any definite amount of logs, nor anything implying employment for any definite time. Every detail of his duty was prescribed for him by the employer. True, he furnished his truck, but only as an implement for performing the service for which he was hired. The fact that he was to be paid by the thousand, rather than by a fixed wage, did not change his status. He was a piece worker, paid for what he did."

The record fails to disclose two of the elements essential for an employer-employee relationship to exist between Chester and Camp: (1) the personal service of Camp as an employee to his employer, and (2) the control by Chester over the details of the work that was being performed. On the other hand, the record clearly shows that Camp, at the time of his death, was engaged in the independent occupation of the transportation of logs with his truck and trailer.

■ The evidence substantially supports the finding of the board that the relationship between Chester and Camp was that of principal and independent contractor.

The judgment of the trial court is reversed. The case is

remanded with directions to reinstate the decision and order of the board of industrial insurance appeals. It is so ordered.

WEAVER, C. J., MALLERY, DONWORTH, and OTT, JJ., concur.

May 6, 1960. Petition for rehearing denied.