

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE SEP 0 5 2019

CHIEF JUSTICE

This opinion was
filed for record
at 8q M on Sept. 5, 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON IN | ) ) ) ) ) | No. 96264-2 |
| VALERIE SAMPSON and DAVID RAYMOND, on their own behalf and on behalf of all others similarly situated, | ) ) ) ) | EN BANC |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Filed: SEP 0 5 2019 |
| KNIGHT TRANSPORTATION, INC., an Arizona corporation, KNIGHT REFRIGERATED, LLC, an Arizona limited liability company, and KNIGHT PORT SERVICES, LLC, an Arizona limited liability company, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

YU, J. — This case arises from a putative class action employment lawsuit involving commercial truck drivers who are paid on a piecework basis. We have been asked by Judge Coughenour of the United States District Court for the

Western District of Washington to answer the following certified question: "Does the Washington Minimum Wage Act require non-agricultural employers to pay their piece-rate employees per hour for time spent performing activities outside of piece-rate work?" Order, *Sampson v. Knight Transp., Inc.*, No. C17-0028-JCC, at 17 (W.D. Wash. June 14, 2018).

The answer is no. All workers must be compensated for all hours worked in a workweek in accordance with the Minimum Wage Act (MWA), ch. 49.46 RCW. For nonagricultural workers, WAC 296-126-021 validly allows employers to demonstrate compliance with the MWA's guaranty that Washington workers receive a minimum wage for each hour worked by ensuring that the total wages for the week do not fall below the statutory minimum wage for each hour worked. Accordingly, the plaintiffs in this case fail to demonstrate as a matter of law that they were uncompensated for time spent "loading and unloading, pre-trip inspections, fueling, detention at a shipper or consignee, washing trucks, and other similar activities." Order at 17.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Valerie Sampson and David Raymond (collectively Sampson) are Washington residents who worked as commercial truck drivers for defendants Knight Transportation Inc., Knight Refrigerated LLC, and Knight Port Services LLC (collectively Knight). Plaintiffs brought this putative class action on behalf of

themselves and others similarly situated for several alleged violations of Washington wage and hour laws. At issue here is Sampson's claim that piece-rate drivers must receive separate hourly compensation for all time spent "on-duty not-driving."[1]

Knight uses two methods to compensate its drivers. Long-haul drivers— those that deliver loads across the United States and Canada—are paid a mileage-based piece rate, based on estimated miles rather than actual miles driven (mileage rate). The per-mile rate varies depending on the length of the trip and is intended to compensate the driver for time spent driving as well as for routine nondriving tasks associated with the trip, including weighing loads, filling out paper work, conducting vehicle inspections, securing and caring for cargo, performing maintenance activities, fueling and washing the truck, and up to two hours of wait time[2] at the shipper or consignee facility. Because these nondriving activities take roughly the same amount of time regardless of the length of the trip, shorter trips are paid at a higher per-mile rate than longer trips. Long-haul drivers are also paid an extra flat fee for certain additional duties, such as hand loading/unloading,

---

[1] Federal regulations require commercial truck drivers to log their work hours as either driving or on-duty not-driving. 49 C.F.R. § 395.8(b). "*Driving time* means all time spent at the driving controls of a commercial motor vehicle in operation." 49 C.F.R. § 395.2.

[2] Two hours is commonly used in the industry as the average time it takes to load or unload cargo. U.S. GOV'T ACCOUNTABILITY OFF., GAO-11-198, COMMERCIAL MOTOR CARRIERS: MORE COULD BE DONE TO DETERMINE IMPACT OF EXCESSIVE LOADING AND UNLOADING WAIT TIMES ON HOURS OF SERVICE VIOLATIONS 1 n.1 (2011).

making extra stops, waiting more than two hours at the shipper or consignee, and crossing borders.

Short-haul drivers—those that pick up loads from major ports in Washington and deliver them across the Pacific Northwest—are paid a flat rate for each round trip (load rate). The load rate is determined by several factors, including the trip length and type of load. Like the mileage rate for long-haul drivers, the load rate is intended to cover all routine nondriving tasks. And like long-haul drivers, short-haul drivers receive extra pay for additional activities, such as long wait times and assisting with loading and unloading. The district court determined that both the mileage rate and load rate qualify as "piece rates" pursuant to Washington law because drivers are paid for tasks completed and not the amount of time worked. *Id.* at 13 (citing *Erickson v. Dep't of Labor & Indus.*, 185 Wash. 618, 620, 56 P.2d 713 (1936)).

Sampson argues that both compensation schemes violate the MWA because drivers spend time completing tasks for which they are not paid. Instead, the time spent on nondriving tasks is "subsumed within [the] mileage or load rate." *Id.* at 14. Sampson argues that the MWA requires employers to pay their employees "per hour" worked and that the workweek averaging used by Knight does not compensate for actual hours worked. *Id.*

The district court acknowledged that it had previously rejected similar claims as not cognizable under Washington law, but it agreed with Sampson that those prior holdings were called into question by our recent decision in *Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 416 P.3d 1205 (2018), and therefore certified the following question to this court.[3] Order at 15.

## ISSUE

Does the MWA require nonagricultural employers to pay their piece-rate employees per hour for time spent performing activities outside of piece-rate work?[4]

## ANALYSIS

The MWA "establish[es] minimum standards of employment within the state of Washington," including setting the minimum wage. RCW 49.46.005(1). The MWA states that "every employer shall pay to each of his or her employees who has reached the age of eighteen years wages at a rate of not less than [the applicable minimum wage] per hour." RCW 49.46.020(1)-(3). The statute does not restrict employers to a specific compensation structure but does require that

---

[3] We accepted amicus briefs from the Attorney General of Washington, Department of Labor and Industries, American Trucking Associations Inc. and Washington Trucking Associations, and Washington Employment Lawyers Association.

[4] "For the purpose of answering this question, the [district court] considers 'time spent performing activities outside of piece-rate work' to include: loading and unloading, pre-trip inspections, fueling, detention at a shipper or consignee, washing trucks, and other similar activities." Order at 17.

employees be compensated at least the minimum wage for each hour worked. *Carranza*, 190 Wn.2d at 619.

With limited exceptions, WAC 296-126-021 allows employers to measure compliance with the MWA by dividing an employee's total wages earned in a week by the total hours worked. If the result equals or exceeds the minimum wage, the requirements of the MWA have been met. This method is commonly referred to as "workweek averaging." If the result falls below the hourly minimum wage, the employer must augment the final compensation to meet the statutory requirements.

Knight contends that WAC 296-126-021 specifically authorizes workweek averaging of all hours worked as an allowable method of measuring compliance with the MWA for piece-rate workers like the truck drivers here. Sampson argues that in light of *Carranza*, WAC 296-126-021 must be interpreted to authorize workweek averaging of piecework wages only with hours spent on the piecework. That is, hours spent on tasks outside the piecework must be separately compensated at an hourly rate at least equal to the applicable minimum wage. Alternatively, Sampson argues that WAC 296-126-021 is not a valid implementation of the MWA.

This is the fourth certified question we have received in the last several years from federal courts relating to piecework compensation and the MWA, but it is the

first where we are required to directly rule on the validity of WAC 296-126-021's

workweek averaging test for compliance for nonagricultural workers. *See Hill v.*

*Xerox Bus. Servs., LLC*, 191 Wn.2d 751, 752, 760, 426 P.3d 703 (2018) (a

payment plan that includes as a metric an employee's "production minutes" does

not qualify as a piecework plan); *Carranza*, 190 Wn.2d at 626-27 (agricultural

piece-rate pickers, who are not subject to WAC 296-126-021, must be paid

separate hourly compensation for the time they spend performing tasks outside of

piece-rate picking work); *Lopez Demetrio v. Sakuma Bros. Farms*, 183 Wn.2d 649,

662-63, 355 P.3d 258 (2015) (agricultural employers required to pay piece-rate

workers separately for rest breaks at a rate calculated by workweek averaging of

production hours).[5] We now hold that WAC 296-126-021 sets forth a valid

method of measuring compliance with the MWA for nonagricultural employees

paid on a piecework basis. Contrary to the dissent's characterization, the court in

*Carranza* limited its holding to agricultural workers because WAC 296-126-021

expressly excluded agricultural workers. 190 Wn.2d at 624; WAC 296-126-

001(2)(c).

---

[5] While we have not ruled on this precise issue, federal district courts have upheld the validity of WAC 296-126-021 for commercial truck drivers paid on a piecework basis. *Mendis v. Schneider Nat'l Carriers, Inc.*, No. C15-0144-JCC, 2016 WL 6650992, at *3 (W.D. Wash. Nov. 10, 2016); *Helde v. Knight Transp., Inc.*, No. C12-0904RSL, 2016 WL 1687961, at *2 (W.D. Wash. Apr. 26, 2016).

A.    We answer the certified question as framed by the district court

As a preliminary matter, we must decide whether to answer the certified question as presented by the district court or exercise our discretion to reformulate the question. *See, e.g.*, *Allen v. Dameron*, 187 Wn.2d 692, 701, 389 P.3d 487 (2017); Order at 17. Knight argues that the question as presented implicitly accepts Sampson's premise that the nondriving tasks at issue are outside the scope of the piece-rate compensation. Knight asks us to reframe the question to read, "Does the MWA prohibit piecework pay from compensating for all activities necessary or incidental to the production of the units of output?" Resp'ts/Defs.' Corrected Answering Br. at 10-11. We decline to do so. What work is accounted for by piece-rate compensation is a factual question for the district court to resolve. *Carranza*, 190 Wn.2d at 615-16. The district court has asked for our guidance on a narrow legal question, and we confine our answer to the scope of the question as presented.

We answer certified questions de novo and in light of the certified record from the federal court. *Carlsen v. Glob. Client Sols., LLC*, 171 Wn.2d 486, 493, 256 P.3d 321 (2011); *see also* RCW 2.60.030(2).

B.    The plain language of WAC 296-126-021 allows workweek averaging of all hours for nonagricultural workers paid on a piecework basis

The Department of Labor and Industries (Department) has long understood WAC 296-126-021 to allow workweek averaging of all hours worked for

8

nonagricultural employees paid on a piecework basis. Sampson would have us interpret the regulation as requiring separate hourly pay for non-piece-rate work. This interpretation is not supported by the plain language of the regulation. Because the Department's long-held interpretation of the regulation comports with the plain language, we agree with the Department's interpretation.

This court interprets regulations according to the same rules that are used to interpret statutes. *Lopez Demetrio*, 183 Wn.2d at 655. First, the court "examine[s] the plain language of the regulation; if that language is unambiguous, it controls." *Id.* A regulation "'is not ambiguous merely because different interpretations are conceivable.'" *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006) (emphasis added) (internal quotation marks omitted) (quoting *Agrilink Foods, Inc. v. Dep't of Revenue*, 153 Wn.2d 392, 396, 103 P.3d 1226 (2005)). Instead, more than one interpretation must be *reasonable. Id.*

The parties disagree on whether or not the regulation is ambiguous. The full text of the regulation states:

> Where employees are paid on a commission or piecework basis, wholly or partially,
>
>> (1) The amount earned on such basis in each work-week period may be credited as a part of the total wage for that period; and
>>
>> (2) The total wages paid for such period shall be computed on the hours worked in that period resulting in no less than the applicable minimum wage rate.

WAC 296-126-021. The Department interprets this to mean that an employer may divide an employee's total weekly earnings by the employee's total weekly hours worked, and if the result is at least equal to the applicable minimum wage, the employer has met its obligation to comply with the MWA. "In this way, [the Department] has allowed employers to 'credit' the piece-rate and commission earnings to other hours worked and has not required employers to compensate employees separately for hours employees might be engaged in non-piece-rate or commission work." Amicus Curiae Br. of the Dep't of Labor & Indus. at 4; *see also* Wash. Dep't of Labor & Indus., Admin. Policy ES.A.3, at 2 (revised July 15, 2014) (MINIMUM HOURLY WAGE), http://www.lni.wa.gov/WorkplaceRights/files/policies/esa3.pdf [https://perma.cc/T4FS-9BCH]. The only payments that are not included in the total wages calculation are vacation pay; holiday pay; and any gratuities, tips, or service fees. Admin. Policy ES.A.3, at 3; *see also* WAC 296-126-022.

Sampson argues that the regulation is ambiguous and that the Department's interpretation is only one of two reasonable interpretations. Sampson asks us to interpret the regulation to "require[] employers to satisfy their obligation to pay for all hours worked before applying workweek averaging." Pls.' Opening Br. on Certified Question at 26.

To support their position, Sampson argues that the Department's interpretation renders subsection (1) of the regulation superfluous because "Subsection (1) provides: 'The amount earned on [a piece-rate] basis . . . may be credited as a part of the total wage for that period.' WAC 296-126-021(1). This means the employer must also credit the employee for wages earned for work performed on some other basis during the period." *Id.* at 27 (alterations in original). Sampson argues that if the Department's interpretation is correct, subsection (1) would be unnecessary, and the regulation would have read only, "'Where employees are paid on a commission or piecework basis, wholly or partially, the total wages paid for such period shall be computed on the hours worked in that period resulting in no less than the applicable minimum wage rate.'" *Id.* at 29.

Sampson is correct that Washington courts interpret regulations in a manner that gives effect to all the language without rendering any part superfluous. *Hayes v. Yount*, 87 Wn.2d 280, 290, 552 P.2d 1038 (1976). However, the Department's interpretation of WAC 296-126-021 does not render subsection (1) superfluous as Sampson contends. Instead, subsection (1) makes it clear that the regulation permits all forms of compensation paid in a workweek to be added together to determine MWA compliance when an employee is paid "partially" on a piecework basis, as allowed by WAC 296-126-021. *See* Admin. Policy ES.A.3, at 3 ("'Total

11

earnings' is meant to include all compensation received for hours worked in the pay period, as well as any additional payments, i.e., split-shift bonus or stand-by pay."). It does not require that nonpiecework compensation be separately paid to workers paid "wholly" on a piecework basis, which is also allowed by WAC 296-126-021.

The Department's interpretation comports with the plain language of the regulation and does not render any part superfluous. Therefore, we agree with the Department's interpretation and move to the central issue in this case—whether the regulation so interpreted violates the MWA.

C.    WAC 296-126-021 does not conflict with the MWA

The central issue in this case is whether workweek averaging, as authorized by WAC 296-126-021, is consistent with the MWA's requirement that workers receive compensation for each hour worked. The Department is tasked with administering and enforcing the MWA and has authority to promulgate regulations related to that purpose. WAC 296-126-021 aids enforcement by specifying how compliance with the MWA will be tested for nonagricultural workers paid on a piecework basis. Administrative regulations adopted pursuant to a legislative grant of authority are presumed to be valid and will be upheld on judicial review if they are reasonably consistent with the controlling statute. *Wash. Pub. Ports Ass'n v. Dep't of Revenue*, 148 Wn.2d 637, 646, 62 P.3d 462 (2003).

To overcome this presumption of validity, Sampson argues that our decision in *Carranza* requires *all* employers to compensate piece-rate workers on a separate hourly basis for work performed outside the piecework, so WAC 296-126-021 is invalid to the extent it authorizes workweek averaging of all hours worked. But our holding in *Carranza* was not so broad. There is no regulation that authorizes workweek averaging for the agricultural workers at issue in *Carranza*—they are expressly excluded from WAC 296-126-021. 190 Wn.2d at 624; WAC 296-126-001(2)(c). Thus, our holding in *Carranza* was necessarily limited to the narrow context of that case because no regulation authorized workweek averaging for agricultural workers.

In *Carranza*, we were asked whether "'Washington law require[s] agricultural employers to pay their pieceworkers for time spent performing activities outside of piece-rate picking work.'" 190 Wn.2d at 618. The plaintiffs in the case were seasonal and migrant agricultural workers who were paid on a piece-rate basis—a set amount for every bin of apples or pears or each lug of cherries picked. *Id.* at 616. They were also required to spend time performing other tasks not related to picking, such as traveling between orchards, transporting ladders, and attending mandatory meetings. *Id.* at 617. We determined that "[t]he plain language of the MWA requires employers to pay their adult workers 'at a rate of not less than [the applicable minimum wage] *per hour*.'" *Id.* at 614-15 (second

13

alteration in original) (quoting RCW 49.46.020(1)-(3)). In the absence of any "exception, other statutory provision, or judicial or executive interpretation," we set out to decide whether the compensation plan at issue complied with this statutory language. *Id.* at 615. We determined that the compensation plan would allow an agricultural employer to "conceal the fact that an employer is not compensating its employees for all hours worked because payment for *some* hours of piece-rate picking work is spread across *all* hours worked." *Id.* at 622. Thus we held that these employees "are entitled to separate hourly compensation for the time they spend performing tasks outside of piece-rate picking work." *Id.* at 626.

The fact that workweek averaging may not be applied to agricultural workers, who are explicitly exempt from WAC 296-126-021, does not automatically mean that workweek averaging is invalid as applied to everyone. *Carranza* therefore does not control here. The ultimate determination for purposes of the MWA remains whether an employer is compensating each employee for all hours worked at a rate greater than or equal to the statutory minimum wage. WAC 296-126-021 merely provides that where the regulation applies, compliance with the MWA's minimum wage requirements may be demonstrated by workweek averaging. It does not deprive nonagricultural workers of their statutory minimum wage and therefore does not conflict with the MWA.

The exemption of agricultural workers from WAC 296-126-021 also represents a reasonable decision that is within the Department's authority to make. The agricultural and trucking industries are different, and piecework compensation serves different purposes in each context. Thus, it is not unreasonable to have different methods of measuring compliance with the MWA.

Paying agricultural workers for every bin of fruit they pick incentivizes them to work harder, faster, and more efficiently while doing that work. The more fruit they pick in an hour, the more they get paid. Requiring this class of historically vulnerable workers to then spend time on activities where they are not earning additional compensation would frustrate the purpose of the MWA. *Carranza*, 190 Wn.2d at 625. It was thus reasonable for the Department to explicitly exempt agricultural workers who are paid on a piece-rate basis from workweek averaging.

Piecework compensation in the trucking industry also promotes productivity but in a very different way. Unlike agricultural workers, truckers are not closely supervised during the day. They are frequently away from the employer's office or terminals for weeks at a time with little oversight. Br. of Am. Trucking Ass'ns Inc. & Wash. Trucking Ass'ns as Amici Curiae at 4. Truck drivers are not paid a per-mile rate so that they will drive faster and produce more miles in an hour. Rather, piecework compensation incentivizes them to make productive use of their day.

For the past 45 years, the regulation has reflected the Department's reasonable determination that workweek averaging is a valid measure of compliance with the MWA for nonagricultural workers. Meanwhile, WAC 296-126-001(2)(c) reflects the Department's reasonable determination to exempt agricultural workers from workweek averaging in light of their particular circumstances. Nothing has changed that would bring the reasonableness of either determination into question. Therefore, we hold that WAC 296-126-021 is not inconsistent with the MWA.

D.     WAC 296-126-021 is a valid implementation of the MWA

Finally, we turn to Sampson's argument that WAC 296-126-021 does not apply to the MWA at all. Sampson's theory is that since the regulation was promulgated pursuant to a specific grant of rule-making authority contained in the industrial welfare act (IWA), ch. 49.12 RCW, its application is limited to that statute. But this argument ignores the necessity of promulgating regulations to "fill the gaps" in the MWA by providing a method of testing compliance for workers compensated on a basis other than an hourly wage, as well as provisions that grant the Department broad authority to do so.

Determining the extent of an administrative agency's rule-making authority is a question of law, which we review de novo. *Wash. Pub. Ports Ass'n*, 148 Wn.2d at 645. An administrative agency "possesses only those powers either

expressly granted or necessarily implied from statutory grants of authority." *Id.* at 646. Agency regulations "may be used to 'fill in the gaps' in legislation if such [regulations] are 'necessary to the effectuation of a general statutory scheme.'" *Id.* (internal quotation marks omitted) (quoting *Green River Community Coll. v. Higher Educ. Pers. Bd.*, 95 Wn.2d 108, 112, 622 P.2d 826 (1980)).

The director of the Department is charged by statute with "the administration and enforcement of *all laws* respecting the employment and relating to the health, sanitary conditions, surroundings, hours of labor, and *wages* of employees employed in business and industry in accordance with the provisions of [the IWA,] chapter 49.12 RCW." RCW 43.22.270(4) (emphasis added). The IWA in turn specifically grants the director "authority to prescribe rules and regulations fixing standards, conditions and hours of labor for the protection of the safety, health and welfare of employees for all . . . occupations subject to [the IWA]."[6] RCW 49.12.091.

The MWA sets minimum wage standards for all employees in the state, both those that are subject to the IWA and those that are not. RCW 49.46.120. The MWA's provisions are "in addition to and supplementary to any other federal, state, or local law or ordinance, or any rule or regulation issued thereunder." *Id.*

---

[6] Most occupations, including truck driving, are subject to the IWA. *See* RCW 49.12.005 (3)-(4). Agricultural labor is exempt from the IWA. RCW 49.12.185.

Thus, a regulation that authorizes workweek averaging for minimum wage compliance promulgated under the IWA is valid so long as the minimum requirements of the MWA are met.

The Department is tasked with the enforcement of the MWA, but the statute does not specify how the Department should measure compliance with the act for employees paid on a piecework basis. WAC 296-126-021, adopted in 1974, fills this gap in the statute as it relates to nonagricultural workers and is within the scope of the Department's rule-making authority.

CONCLUSION

WAC 296-126-021 implements the MWA and allows employers to use workweek averaging to measure compliance with the MWA for nonagricultural workers paid on a piecework basis. The regulation is not in conflict with the MWA's guaranty of a per hour minimum wage. Rather, it is a reasonable method of ensuring compliance adopted by the agency with expertise in the field. Since WAC 296-126-021 ensures compliance with the MWA, we answer the certified question in the negative—the MWA does not require nonagricultural employers to pay their piece-rate employees per hour for time spent performing activities outside of piece-rate work.

_____ Yu, J.

WE CONCUR:

_____ Fairhurst, C.J.

_____ Stephens, J.

_____ Johnson, J.

_____

_____ Madsen, J.

_____ González, J.

_____

_____

*Sampson v. Knight Transp., Inc.*

No. 96264-2

OWENS, J. (dissenting) — We are asked to decide whether the Washington Minimum Wage Act (MWA), chapter 49.46 RCW, requires "non-agricultural employers to pay their piece-rate employees per hour for time spent performing activities outside of piece-rate work." Order, *Sampson v. Knight Transp., Inc.*, No. C17-0028-JCC, at 17 (W.D. Wash. June 14, 2018). I would answer in the affirmative. I believe our recent decision in *Carranza v. Dovex Fruit Co.*, 190 Wn.2d 612, 416 P.3d 1205 (2018), compels this court to hold that the MWA requires nonagricultural employers to pay their piece-rate employees on a separate hourly basis, at least equal to the applicable minimum wage, for the time spent performing activities outside of their piece-rate work. *Carranza* held that the plain language of the MWA mandates that agricultural employers pay employees on a separate hourly basis for activities outside of piece-rate work. However, *Carranza* was based on only the MWA, which applies equally to both agricultural and nonagricultural employees. Consequently, WAC 296-126-021 is contrary to the plain language of the MWA insofar as it permits nonagricultural employers to pay their employees piece-rate pay for activities

performed outside the scope of their piece-rate work. Accordingly, I would hold that WAC 296-126-021 is invalid. Thus, I respectfully dissent.

Plaintiffs Valerie Sampson and David Raymond (collectively Sampson) argue that the MWA requires that Knight Transportation Inc., Knight Refrigerated LLC, and Knight Port Services LLC (collectively Knight) pay employees "per hour worked" and that Knight's piece-rate wages, which are based on the piece-rate compensation scheme set out in WAC 296-126-021, are unlawful. Order at 14. Stated another way, Sampson contends that WAC 296-126-021 is invalid because it conflicts with the plain language of the MWA.

The Washington Administrative Procedure Act (APA), chapter 34.05 RCW, governs our review of the validity of an agency regulation. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015). Under the APA, an agency regulation may be invalidated only when it (1) violates constitutional provisions, (2) exceeds the agency's statutory rule-making authority, (3) was adopted without complying with statutory rule-making procedures, or (4) is arbitrary and capricious. RCW 34.05.570(2)(c). When an agency's regulation is reasonably consistent with the statutes it implements, an agency acts within its statutory rule-making authority and the regulation is presumed to be valid. *Wash. State Hosp. Ass'n v. Dep't of Health*, 183 Wn.2d 590, 595, 353 P.3d 1285 (2015). However, regulations that are inconsistent with the statutes they implement

2

are beyond the agency's authority and are therefore invalid. *Id.*

WAC 296-126-021 provides:

Where employees are paid on a commission or piecework basis, wholly or partially,

(1) The amount earned on such basis in each work-week period may be credited as a part of the total wage for that period; and

(2) The total wages paid for such period shall be computed on the hours worked in that period resulting in no less than the applicable minimum wage rate.

Under WAC 296-126-021, an employer meets its minimum wage obligation when an employee's total earnings, including piece-rate wages, are greater than the applicable minimum wage rate when divided by the total number of hours the employee worked.

To assess the validity of WAC 296-126-021, we must examine the MWA. The MWA provides that "every employer shall pay to each of his or her employees . . . wages at a rate of not less than [the applicable minimum wage] per hour." RCW 49.46.020(1)(a)-(d). In *Carranza*, we held that because the plain language of the MWA requires employers to pay their adult workers "'at a rate of not less than [the applicable minimum wage] *per hour*,'" 190 Wn.2d at 614-15 (alteration in original) (quoting RCW 49.46.020(1)-(3)), "agricultural workers may be paid on a piece-rate basis only for the hours in which they are engaged in piece-rate picking work." *Id.* at 615.

*Carranza* involved facts strikingly similar to the case before us. A fruit

3

company paid its agricultural employees on a piece-rate basis. *Id.* at 616. The

agricultural employees brought a lawsuit, alleging that the fruit company failed to

comply with Washington law because the MWA requires that agricultural employees

be compensated separately for work performed outside of their piece-rate work. *Id.* at

617. We agreed with the agricultural employees, reasoning that the legislature's

choice of the term "per hour" in the MWA signified its intent that employees have a

right to compensation for each hour worked, rather than a right to workweek

averaging. *Id.* at 619. We further held that "the MWA's plain language requires us to

conclude that employees have a per hour right to minimum wage." *Id.* at 620.

Accordingly, we determined that piece-rate employees may be paid on a piece-rate

basis for only the hours in which they perform piece-rate work; activities outside of

that piece-rate work must be compensated on a separate hourly basis. *Id.* at 615.

The majority attempts to distinguish *Carranza*, contending that because

agricultural employees are expressly excluded from WAC 296-126-021, *Carranza*

was "necessarily limited to the narrow context of that case." Majority at 13. But this

distinction is unavailing because the holding in *Carranza* is not limited to only

agricultural employees. Although it is true that WAC 296-126-021 does not apply to

agricultural employees, *Carranza*'s "holding that the MWA provides employees a

right to minimum wage compensation for each individual hour of work [was] based

on its reading of RCW 49.46.020, which applies equally to nonagricultural

4

pieceworkers." 190 Wn.2d at 645 (Stephens, J., dissenting); *see* WAC 296-126-001(2)(c). Indeed, RCW 49.46.020 does not distinguish between agricultural and nonagricultural employees. Instead, RCW 49.46.020 requires that *every* employer pay his or her employee the applicable minimum wage per hour.

Because *Carranza* supplied the plain meaning of the MWA, which applies to both agricultural and nonagricultural employers equally, *Carranza* necessarily requires that *all* employees who are paid on a piece-rate basis be entitled to separate hourly compensation for time spent performing tasks outside of their piece-rate work. WAC 296-126-021, on the other hand, permits workweek averaging to determine minimum wage compliance under employers' piece-rate compensation plans. Accordingly, WAC 296-126-021 is inconsistent with the MWA because it does not provide employees with an hourly right to minimum wage for tasks performed outside of their piece-rate work. Thus, I would hold that WAC 296-126-021 is invalid.

I believe this court's recent decision in *Carranza* requires this court to hold that WAC 296-126-021 is contrary to the plain language of the MWA insofar as it permits nonagricultural employers to pay their employees piece-rate pay for activities performed outside the scope of their piece-rate work. Accordingly, I would answer the district court's certified question in the affirmative and hold that the MWA requires Knight to pay its employees on a separate hourly basis for their time spent performing activities outside of their piece-rate work. I respectfully dissent.

5

Owens, J.

McCleod, J.

Wiggins, J.